## LESLIE STEIDEL v. ELEANOR METCALF AND OTHERS. CASUALTY RECIPROCAL EXCHANGE, RELATOR.[1]

April 10, 1941.

No. 32,702.

*Johnson, Sands & Brumfield,* for relator.
*John P. Dolan* and *Reynolds & McLeod,* for respondent-employers.

LORING, JUSTICE.

Writ of *certiorari* to the industrial commission to review its order directing insurer-relator and employers-respondents to assume all liability for compensation benefits due employe-respond-

[1]Reported in 297 N. W. 324.

ent as a result of an accident occurring to him in the course of his employment on March 7, 1939.

May 16, 1939, employe filed a claim petition with the industrial commission against employers for compensation benefits alleged to be due as the result of an accidental injury. The employers did not answer. May 19, 1939, the employe filed with the industrial commission an amended petition in which the alleged insurer was joined with the employers. Insurer interposed an answer denying liability on the ground that no insurance was in effect between insurer and employers at the time of the accident. July 6, 1939, the insurer filed with the industrial commission a petition for the trial of the issue of insurance prior to and separate from the trial of the merits of the employe's claim for compensation. Proceedings were had before one of the industrial commission's referees, who on January 29, 1940, filed his findings of fact and order directing the insurer and employers to assume all liability for the compensation benefits found to be due employe. Insurer appealed to the industrial commission, which affirmed the referee's decision.

The Metcalf Transfer Company was a partnership consisting of Eleanor and Allen Metcalf. They did all of their insurance business with the W. F. Noltimier Insurance Agency, which was a duly licensed insurance agent for the Casualty Reciprocal Exchange insurer, and all payments of premiums were made to that agency, which was conducted by W. F. Noltimier.

The facts are as follows: September 14, 1938, employers obtained workmen's compensation insurance with insurer on an estimated annual pay roll of $1,800 for one year at an annual premium of $94.50 and paid $25 down; November 17, 1938, employers received insurer's notice of cancellation of the policy, effective as of November 28, for nonpayment of premium. Pursuant to employers' payment to Noltimier, November 29, of $69.50, the balance of the premium due, the insurer on December 8 reinstated the policy. December 15, 1938, the insurer notified employers through Noltimier that its annual pay roll basis would be increased to $7,000

and made demand for an additional premium of $273. Later in December the employers cancelled the public liability and property damage insurance it had with insurer, and $73.81, the unearned premium thereon, was credited by the insurer on the compensation insurance, leaving a claimed balance of $199.19. February 3, 1939, insurer notified employers of the cancellation of the compensation insurance as of February 15 for nonpayment of the premium balance of $199.19, stating that if the insured would remit promptly the stated balance the company would revoke the notice of cancellation and again place the coverage in full force and effect. Upon receipt of this notice and one of February 16 completing the cancellation, Mrs. Metcalf, one of the partnership insureds, had conversations with Noltimier with reference to the protection, in which she testified that he told her not to worry, that he would take care of it, everything would be all right. This statement was made after the letter of February 3 was received. After the letter of February 16 was received, she said that he told her that she was not cancelled out for anything but a pay roll audit and that he then took that audit and told her not to worry, that everything was all right. Employe was injured on March 7, 1939, while working for the employers in the course of his employment.

Prior to March, 1938, employers were indebted to Noltimier on open account for premiums advanced on various types of insurance in the sum of $258.96. Sometime in March, 1938, to secure Noltimier's advance of $305 additional premiums, employers executed a chattel mortgage on their equipment to him. Payments were made on the open account from time to time. In his bill of June 20, 1939, Noltimier stated the balance due from employers at $393.93, which statement did not include the balance due on the compensation insurance in the sum of $199.19.

■ It appears from the record that the insured did business with the agency largely on a credit basis, making small payments from time to time, and was almost always, if not always, somewhat in arrears. It also appears from the correspondence and the

remittances that the insurer was aware of this. Its policy had previously been cancelled out and reinstated. All remittances to the insurer were made to the agency. From the entire course of conduct in handling this business, the habit of extending credit to the insured and the insurer's knowledge of its agent's methods seems quite plain. It would seem that the authority of the agent was extended by the agent's conduct of its affairs known to the company to include apparent authority to extend credit and to reinstate the policy. The agent certainly had authority to bind the company to a contract of insurance. Noltimier's statement was equivalent to a commitment of coverage and would be so understood by any layman. Had this been an original transaction with him as agent for the insurer it would have been binding though oral. Dose v. Insurance Co. 206 Minn. 114, 117, 287 N. W. 866. We regard as justified the inference drawn by the commission from this testimony that Noltimier had not only the authority as agent to insure and collect premiums but the apparent authority to extend credit to the Metcalfs and to reinstate the policy upon complying with the company's requirements, which as he interpreted them to Mrs. Metcalf would reinstate the policy upon furnishing a pay roll audit which he proceeded to take and turn in. Such being the case, the liability of the insurer to pay the award made by the commission follows.

■ The insurer raises the question of the jurisdiction of the commission to apply equitable principles in ascertaining whether or not the relation of insurer and insured existed; and if we understand the contention correctly it is that the commission may only apply principles of law as distinguished from equity in making its determination and decision. It is true that the judicial power of the state is by the constitution vested in the courts of the state, but there has grown up within the state government a system of boards, which, though charged with administration, necessarily apply law to facts found by them subject always to review by the courts. It must be conceded that these boards in arriving at their decisions necessarily apply legal principles. For instance, the in-

dustrial commission does that in determining whether or not the relationship of employer and employe exists and whether or not the compensation act applies to certain situations. They are constantly endeavoring to follow our decisions in making application of legal principles to the facts before them and must do so in order to make the awards and decisions authorized by law. We can see no distinction between their right to apply such principles and their right to apply the well known principles of equity to the situations with which they have to deal. Frederickson v. Burns Lbr. Co. 175 Minn. 539, 221 N. W. 910, settles that question. They are in fact legislative instrumentalities but exercise powers in the determination of rights which at least have the appearance of being quasi-judicial in character. Allied Mutuals Liability Ins. Co. v. Interstate Cork Co. Inc. 134 Misc. 504, 235 N. Y. S. 541.

■ We see no distinction between the power of the commission over the questions arising between the employe and the insurer or between the employer and the insurer for the benefit of the employe and those questions which arise directly between employer and employe. The workmen's compensation act, as amended by L. 1937, c. 64 (3 Mason Minn. St. 1938 Supp. §§ 4272-1 to 4272-10), compels the employer to carry compensation insurance; and 1 Mason Minn. St. 1927, § 4289, as amended by L. 1931, c. 352, § 1 (3 Mason Minn. St. 1940 Supp. § 4289), expressly gives the workman an equitable lien upon any amount which the insurer may owe the employer under such policies and under certain circumstances requires direct payment from the insurer to the workman, who may, as in that section provided, proceed directly against the insurer. That being the case, we regard the relator's objection to the power of the commission as not well taken.

Order affirmed and writ discharged.

STONE, JUSTICE (dissenting).

My disagreement is compelled simply because, so far as I can see, the insurer was under no obligation to either employe or employer at the time of the former's compensable injury.

The policy had been cancelled in the exercise of the undisputed right of the insurer. Of course the agent had the authority to issue a new policy; but, in the circumstances, he had no authority to issue it without payment of the premium. He had no right to waive the payment of a premium on a new policy. There is no claim that the insurer accepted the agent as its debtor in place of the insured. See 29 Am. Jur., Insurance, § 406.

It is immaterial that for a long time much credit had been extended to the insured by the agent and also his principal, the insurer. Such credit was summarily and rightfully terminated by the cancellation. Thereafter it would take a clear showing of requisite authority to justify holding that the agent could have bound his principal by the issuance of a new policy without payment of the premium. There is no claim of express or implied authority, and it is but elementary "that apparent authority cannot be established by the statements or conduct of the agent, but that the principal is liable only for that appearance of authority caused by himself." Mitchell v. Western F. Ins. Co. 272 Mich. 204, 209, 261 N. W. 300, 302. See Mulligan v. Farmers Nat. Bank, 194 Minn. 451, 260 N. W. 630; Dispatch Ptg. Co. v. National Bank of Commerce, 115 Minn. 157, 132 N. W. 2.

Passing all that, has the time come and is the law in such state that, where a contract has been rightfully terminated by one party because of the other's breach, an agent of the wronged party can bind his principal by a new contract of the same tenor by his mere oral assurance to the third party that the latter need not "worry" over the subject matter? My respectful submission is to the contrary. There is no showing here warranting a finding (1) of the requisite authority of the agent nor (2) that a new contract was made, authority or none.