ROLF TOENBERG v. JOHN HARVEY AND OTHERS.[1]

October 19, 1951.

No. 35,579.

[1]Reported in 49 N. W. (2d) 578.

*Shepley, Severson & Johnson* and *Hunt, Palmer & Hood,* for relators John Harvey, individually, and Employers Mutual Liability Insurance Company of Wisconsin.

*Reynolds & McLeod,* for respondent Preferred Accident Insurance Company of New York.

*James Pomush,* for respondent Rolf Toenberg.

MAGNEY, JUSTICE.

Certiorari to review a determination of the industrial commission holding two workmen's compensation insurance carriers equally liable for payments of compensation to an injured employe and medical, hospital, surgical, and other expenses incurred.

On December 10, 1947, John Harvey, as an individual, was engaged in timber operations at or near Ash Lake, Orr, St. Louis

county, Minnesota. In this enterprise, he was insured for workmen's compensation liability with the Employers Mutual Liability Insurance Company of Wisconsin, hereinafter referred to as Employers Mutual. On the above date, the same John Harvey and Ella Harvey, his wife, as copartners, operated a business at Ash Lake under the name of Hillcrest Inn. Its nature is indicated by its name. The copartnership in the conduct of this business was insured for workmen's compensation liability with the Preferred Accident Insurance Company of New York, hereinafter referred to as Preferred.

On December 10, 1947, Rolf Toenberg, an employe of the copartnership, sustained personal injuries in the course of his employment while working at the Inn. He was employed by the copartnership, and knew that he was working for John and Ella Harvey. He was paid out of partnership funds, the checks being signed by Ella Harvey. His only employment was at the Inn, and he had never up to that time worked for John Harvey, individually, in the timber operations.

After the accident, in the first report of injury, John Harvey reported to Employers Mutual, the workmen's compensation insurer on his timber operations, that Harvey was the employer of Rolf Toenberg, that the nature of the business of Harvey was "Logging Contractor & Resort-Store," and that Toenberg was a "store employee" carried on the regular payroll of Harvey. After the receipt of the accident report, an audit was made by Employers Mutual, at which time the auditor ascertained that John Harvey and Ella Harvey were operating a business known as the Hillcrest Inn. The auditor included in the audit the wages paid to Toenberg by Hillcrest Inn, and the premium was collected by Employers Mutual on such wage. At the time the premium was collected and the audit made, Employers Mutual had no knowledge that any other workmen's compensation liability policy had been issued or was in effect to cover a partnership operating Hillcrest Inn. And, at that time, the auditor had no knowledge that John Harvey and Ella Harvey were operating a business known as Hillcrest Inn as a partnership.

Subsequent to the audit, Employers Mutual paid $873.73 in compensation to Toenberg and $579.11 in medical, hospital, surgical, and other benefits. After the payment of the above sums, Employers Mutual learned for the first time that John and Ella Harvey, doing business as Hillcrest Inn, carried a standard workmen's compensation liability policy with Preferred, and discontinued making payments, contending that, inasmuch as Toenberg was in the employ of the partnership at the time of the accident, the insurer of the partnership, Preferred, should reimburse Employers Mutual for moneys paid out by it, and that Preferred should assume any and all liability for compensation and expenses to which the employe might be entitled as a result of his accidental injury of December 10, 1947. Employers Mutual refused to make further payments, and proceedings were instituted by Toenberg. The referee found that on December 10, 1947, Toenberg was not an employe of John Harvey, but of John Harvey and Ella Harvey, doing business as Hillcrest Inn, and that Employers Mutual, the workmen's compensation liability carrier of John Harvey, as an individual, first learned of the operations of John Harvey and Ella Harvey about November 3, 1948. He made an award against Preferred, the insurance carrier of the partnership, ordering payments to commence December 10, 1947, and dismissed the claim for compensation against John Harvey as an individual and his insurance carrier. No finding was made as to the claim of Employers Mutual for reimbursement. Both companies appealed to the industrial commission. The commission awarded compensation against John Harvey and Ella Harvey, doing business as Hillcrest Inn, and against John Harvey as an individual and their respective insurers, directing each insurer to pay one-half the amount awarded Toenberg. The commission made no finding that John Harvey and Ella Harvey operated the Hillcrest Inn as a copartnership. As stated, the commission imposed liability upon John Harvey as an individual and his insurer. It gave as its basis for this determination that the question was one of equity rather than one of law, and that, "While Harvey insured his woodsmen under the Employers Mutual * * * policy, nevertheless, lia-

bility under the policy also extended to any of his other employes by failure to obtain a separate risk permit from the Industrial Commission." It quoted M. S. A. 176.03, which provides the manner in which split coverage may be permitted, as follows:

"* * * Nothing herein contained shall prevent any *employer*, with the approval of the industrial commission, from excluding medical and hospital benefits as required in section 176.15. *An employer conducting distinct operations at different locations* may either insure or self-insure such other portion of *his* operations which may be determined by the industrial commission to be a distinct and separate risk." (Italics supplied.)

The commission stated: "There is no indication here that there was any attempt on the part of John Harvey to separate his risk." As authority it relied on Skuey v. Bjerkan, 173 Minn. 354, 217 N. W. 358. It reasoned that "it seems only fair that the company assuming the liability" on the partnership "should answer in payment of compensation benefits along with the coverage provided under the policy written for" the individual partner.

■ As is well stated by counsel for Employers Mutual, the first question for our determination is:

"When an employe sustains personal injuries caused by accident arising out of and in the course of his employment by a partnership, duly insured against workmen's compensation liability, should the compensation insurer of one of the partners who individually carries on separate business activities, be required to share the burden of compensation benefits with the compensation insurer of the partnership?"

On June 23, 1947, a workmen's compensation liability policy was issued by Preferred to "Ella T. Holloway," as an individual, "d/b/a Hillcrest Inn." Subsequent to that date, the policy was amended by an endorsement so as to have the name of the insured read: "John C. Harvey and Ella T. Harvey d/b/a Hillcrest Inn," and the status of the employer was changed to read "co-partnership"

instead of "individual." The endorsement was "effective from June 23, 1947." By the terms of the policy of Employers Mutual, it is—

"K. * * * subrogated, in case of any payment under this Policy, to the extent of such payment, to all rights of recovery therefor vested by law either in this Employer, or in any employee or his dependents claiming hereunder, against persons, corporations, associations or estates."

Employers Mutual contends that, as to compensation benefits due its employe, a partnership is to be treated as a separate employing entity, and that it and its insurer should bear the whole burden of compensation benefits due to an employe of the partnership.

Section 176.01, subd. 5, which defines "employer" under our workmen's compensation act, reads:

"The term 'employer' means every person who employs another to perform a service for hire and to whom the 'employer' directly pays wages, and includes any person, corporation, *copartnership,* or association, or group thereof, * * *." (Italics supplied.)

By statute, therefore, a copartnership is a legal entity for purposes of determining liability under the workmen's compensation act to persons not members of such partnership.

In Keegan v. Keegan, 194 Minn. 261, 263, 260 N. W. 318, 319, this court said:

"* * * The common law as to partnerships has been markedly changed. Although the uniform partnership act does not make a partnership an entity for all purposes, it does so treat it in certain respects and for certain purposes. * * *

*     *     *     *     *

"Under the circumstances of the instant case, we hold that the partnership was an entity to the extent of entitling the dependent widow to the compensation awarded."

In Gleason v. Sing, 210 Minn. 253, 256, 297 N. W. 720, 722, we said:

"* * * He [defendant] was not plaintiff's employer, * * *. True, the copartnership of which he was a member was within the act,

as was also his driver, Mickelson, and plaintiff; but that did not constitute him in his individual capacity plaintiff's employer within 1 Mason Minn. St. 1927, § 4326(d), which defines an 'employer' * * *. Only the partnership was plaintiff's employer.

"While a copartnership at common law was not considered a distinct entity from the partners composing it, the modern tendency is the other way, i. e., to treat a partnership as an entity distinct from and independent of the individuals composing it. * * * The uniform partnership act * * * has wrought decided changes in the common-law conception of such organizations, * * *.

"It is well to remember also that liability under the compensation act arises by virtue of a contractual relationship between the employer and the employe. Here we have no such contract between plaintiff and defendant. Plaintiff was hired, paid, and insured by the partnership only. It was his employer, not defendant. * * * If plaintiff suffered 'injury * * * caused by accident arising out of and in the course of the employment,' he was, as a matter of law, entitled to the benefits and advantages provided by the act. These obligations were cast upon the employer and its insurer, and they as such must meet them."

Under the facts and circumstances here and the statute and cases above cited, this partnership must be treated as a separate employing entity for the purpose here involved. It does not follow from that that for all purposes a partnership is to be regarded as a legal entity. The partnership was Toenberg's employer. John Harvey was not. There was no contractual relationship between Toenberg and Harvey as an individual, and liability under the compensation act arises by virtue of contract. A contract of hire—a relationship of employer-employe—is a condition precedent to benefits and duties under the statute. Pederson v. Pederson, 229 Minn. 460, 39 N. W. (2d) 893, and numerous cases therein cited.

The industrial commission based its decision, in part at least, on the expressed ground that, by reason of Harvey's failure to obtain a separate-risk order from the industrial commission under § 176.03, liability under the Employers Mutual policy also extended

to any of Harvey's other employes outside of his timber operations. We have already quoted this section. It applies by its terms to any employer who conducts distinct operations at different locations. Employer John Harvey was conducting only one operation, that is, his logging enterprise. He was not the employer operating the Hillcrest Inn. The two operations were distinct operations, but they were not *his* distinct operations. Each operation was conducted by a separate, distinct employing entity. This is not a case where an employer attempts to split his risks, which requires an order of permission from the industrial commission. The separate-risk statute, § 176.03, can have no application here. Neither does Skuey v. Bjerkan, 173 Minn. 354, 217 N. W. 358, cited by the commission in support of its determination. In that case, which involved a claim by an employe against a single employer and his insurer, the insurance carrier attempted to avoid liability on the ground that the occupation of the injured employe was not within the coverage of the policy.

■ As has been stated, in ignorance of the fact that John and Ella Harvey were copartners and of the existence of the policy of Preferred, Employers Mutual included Toenberg's wages in its payroll audit of John Harvey's logging operations and collected premiums thereon. It is contended by Preferred that these facts create a basis for estoppel or the shifting of liability. This controversy is between Preferred and Employers Mutual. There is no claim by either that Toenberg is not entitled to compensation and expenses. There is no evidence that Preferred knew of or acted or relied upon the acts of Employers Mutual. No such finding was made by the industrial commission, and its determination was not based on the ground that Employers Mutual would be estopped to disclaim coverage on account of its audit and the collection of premiums. John Harvey can collect a refund from Employers Mutual, and Preferred can collect a premium from the partnership.

In Finn v. Phillippi Brothers, 211 Minn. 130, 134, 300 N. W. 441, 443, we said:

" * * * But the Maryland contends that because the Liberty audited the McCree pay rolls to ascertain the premium it was entitled to collect and did collect, not only for the McCree employes but also for the Antonsen, the Liberty became in law the insurer for the Antonsen; and that it is estopped to deny it. It does not seem to us that as between these two insurance carriers there can be any basis for estoppel or shifting of liability. There is no evidence that the Maryland knew of or relied on what the Liberty did or failed to do in the premises."

■ Ordinarily, *in the absence of prejudice to the employe,* a workmen's compensation insurer is not estopped by the voluntary payment of compensation or the furnishing of hospital or medical care to urge the defense that the policy did not cover the employment. 58 Am. Jur., Workmen's Compensation, § 567. In the instant case, no prejudice can result to Toenberg by holding that Employers Mutual is not estopped.

■ The industrial commission apportioned liability equally as between the two insurers, the healing period for employe commencing December 10, 1947. Employers Mutual contends that the commission should order Preferred, the insurer of the partnership employer, to reimburse Employers Mutual, the insurer of the individual member of the partnership, for compensation benefits paid by it under a mistake of fact as to the identity of the employer and the existence of the partnership insurance coverage. Having paid under a mistake of fact, Employers Mutual claims that it is entitled to subrogation. Employers Mutual paid an obligation owed primarily by Preferred under the latter's policy covering the partnership and under which it contracted to pay compensation and benefits to the employes of the partnership, including Toenberg.

This proceeding before the industrial commission was the first legal proceeding in the matter. Employers Mutual had made its payments voluntarily. The question then arises, and it is pressed by Preferred, whether the industrial commission has the power to order Preferred to reimburse Employers Mutual.

The industrial commission may apply principles of equity. In Steidel v. Metcalf, 210 Minn. 101, 105, 297 N. W. 324, 326, we stated:

"* * * We can see no distinction between their right to apply such principles [of law] and their right to apply the well known principles of equity to the situations with which they have to deal. * * *

"We see no distinction between the power of the commission over the questions arising between the employe and the insurer or between the employer and the insurer for the benefit of the employe and those questions which arise directly between employer and employe."

Section 176.255 provides:

"Where benefits are payable under the provisions of this chapter, and a dispute arises between two or more employers or insurers as to which of the employers or insurers is liable for payment thereof, the commission may direct the payment of the benefits by one or more of the employers or insurers pending the determination of liability. Upon determination of liability the commission shall order the party liable for the benefits to reimburse any other party for payments made with interest at the rate of five per cent per annum. The commission may also award reasonable attorney fees in favor of the claimant and against the party held liable for the benefits."

Our facts are, of course, quite different from those set out in the statute. It is plain that the commission, on the petition of the employe, could have ordered Preferred to pay all the compensation and expenses growing out of his injury to which Toenberg was and is entitled. If it had done that, without anything further, Toenberg would have made a double recovery, which result would, of course, have been undesirable. However, if the commission had made an award holding Preferred liable for all compensation and expenses to which Toenberg would have been entitled, there is no reason, in our opinion, why it could not have directed to whom it should be paid, thus by this method reimbursing Employers Mutual. We appreciate that the Wisconsin court in Employers Mut. L. Ins.

Co. v. Industrial Comm. 230 Wis. 374, 284 N. W. 40, and the New York court in New Amsterdam Cas. Co. v. Commercial Cas. Ins. Co. 129 Misc. 466, 222 N. Y. S. 701, have held that the commission is without power to order reimbursement. In the Wisconsin case, there had been a prior determination of the industrial commission holding one of the insurers liable for payment of compensation.

The instant proceeding before the industrial commission was an initial one to determine the liability of an employer and its insurer. The employe made his claim against two employing entities and the insurer of each. In that situation, the commission could have found only one of the employing units and its insurer liable for the payments of benefits. There is no doubt that the commission has the power so to determine; and, if it directed compensation payments to be paid in the manner indicated, the fact that the result would also amount to an adjudication between the insurance carriers would seem to be of no moment. The commission has the power to adjust matters between an employe and insurers. Steidel v. Metcalf, 210 Minn. 101, 297 N. W. 324, *supra*. If such a matter can be adjusted in the proceeding, and we do not see why it cannot, there seems no sensible reason why we should direct the controversy between the insurance carriers to be determined in an independent separate action. The injured employe will receive under the suggested disposition all he is entitled to under the law, and Preferred will not be paying out any more than it had contracted to pay under its agreement with the partnership.

The award against John Harvey, individually, and his insurer, Employers Mutual Liability Insurance Company of Wisconsin, is reversed and the proceedings remanded with directions to award compensation benefits against the partnership and its insurer, Preferred Accident Insurance Company of New York, only; to dismiss the proceedings as to John Harvey, individually, and his insurer; and to order Preferred Accident Insurance Company of New York to reimburse Employers Mutual Liability Insurance Company of Wisconsin in the sum of $1,452.84.

So ordered.