BAKER, DOING BUSINESS AS BAKER UNITED SHOWS AND
UNITED STATES CASUALTY COMPANY *v.* BILLINGSLEY,
ALLEN.

[No. 18,744.   Filed February 24, 1956.   Rehearing denied
April 17, 1956.   Transfer denied September 24, 1956.]

*Hunt, Longfellow & Suedhoff,* of Fort Wayne, for appellants.

*Wernle & Ristine,* of Crawfordsville, for appellee, Fred L. Billingsley.

CRUMPACKER, J.—The Industrial Board of Indiana awarded compensation to the appellee, Fred L. Billingsley, for accidental injuries arising out of and in the course of his employment by the appellee, Ernest Allen, and the appellant, Tom L. Baker. Allen abided by the award and is made an appellee in this court solely because he is a party to the record below. As he has

no interest in this appeal the designation "appellee" refers to Billingsley only. The appellant, United States Casualty Company, was brought into the case as Baker's insurance carrier and both it and Baker defended on the ground that the appellee was not and never had been an employee of Baker and at the time of the injuries complained of he was in the exclusive employ of Allen. The board found however that at said time the appellee was the employee of both Baker and Allen and the validity of that finding is the sole question presented by this appeal.

There is evidence tending to establish the following facts: On and prior to April 1, 1952, the appellant Baker was the owner of an amusement enterprise, commonly known as a "Street Carnival," which he operated under the business style of "Baker United Shows." On the day above mentioned the said appellant entered into a written contract with Allen whereby he agreed to sell Baker United Shows to him for a stated consideration payable in installments. Title to the physical assets of the enterprise remained in Baker until the full purchase price was paid and up to the time of the accident here involved Allen's obligations were current in all respects. Said contract gave Allen the right to use the name "Baker United Shows" in the operation of the enterprise and all contracts Baker then had for the future appearances of the carnival in various cities of Indiana, including the city of Wabash, during the 1952 season were assigned to Allen who obligated himself to perform them. At the time this contract was executed Baker United Shows was in winter quarters in Indianapolis and Baker agreed to devote 30 days of his time, without pay, in assisting Allen in getting the show equipment ready and set up for its first engagement of the 1952 season and thereafter to assist in the man-

agement of said show for such period and at such salary as the parties might agree upon.

Pursuant to this contract Baker worked gratuitously for Allen for 30 days getting the show out of winter quarters and thereafter he was carried on Allen's payroll until June 13, 1952, at a salary of $150 per week. At the time this contract was entered into Baker was in possession and control of a ferris wheel and a special truck used in its transportation which were not included in the transaction. By an oral agreement, however, Baker furnished said wheel and truck for Allen's use in connection with the carnival and Allen furnished and paid for all help necessary for its operation and transportation from place to place. Fifty percent of the net proceeds of such operation went to Allen and fifty percent thereof to Baker. For aught that appears to the contrary this agreement could be rescinded at any time by either party without liability to the other.

On August 9, 1952, Allen saw the appellee, whom he had known since 1947, in Delphi and offered him a job with the carnival as a mechanic charged with the duty of keeping the trucks and mechanical rides in working order and performing such other services as he might be directed to do from time to time. He accepted the employment and joined the carnival the next day at Hartford City where it was then showing. He worked on said trucks and rides until August 17, 1952, when Allen sent him to Wabash where the carnival was due to open. When he got there Allen and one Handler, an employee of Allen's, told him to assist in erecting the ferris wheel. While doing so his right arm became entangled in the ropes of the hoisting gear and was twisted off about two inches above the elbow. It is undisputed that Allen hired the appellee, carried him on his payroll and paid his wages from which Allen

deducted social security, withholding taxes and unemployment insurance payments. From the time appellee was employed until he was hurt he never saw Baker and Baker never gave him any orders or directed his work in any particular. As far as he knew Allen was his sole boss and all work he did was done under Allen's direction.

Both Allen and Baker testified that at the time of the accident in controversy Baker had control of the ferris wheel and there is evidence that while Baker was on Allen's payroll he supervised the layout of the entire carnival, including the ferris wheel, on the various lots upon which it played during the 1952 season and after he left Allen's employ he frequently visited the carnival, usually on Saturdays and Sundays, to see how things were going. Allen further testified that when the appellee was hurt Baker had the right to hire and fire help and it is undisputed that Baker paid the appellee's doctor and hospital bills occasioned by the accident. It is further undisputed that the ferris wheel in controversy actually belonged to one Paul Dragoo but there is no evidence of probative value concerning any arrangement Baker may have had with him after Allen took over.

The appellants contend that these facts, as a matter of law, compel the conclusion that the appellee was in the sole employ of Allen at the time he was injured and therefore the award of the Industrial Board is contrary to law as to them. We cannot agree. While the oral contract between Baker and Allen concerning the management and control of the ferris wheel may not rise to the dignity of a partnership agreement it bears all of the earmarks of a contract under which Baker and Allen entered a joint adventure, a legal concept defined as "an enterprise un-

dertaken jointly by several persons and, more particularly, as an association of two or more persons to carry out a single business enterprise for profit," for which purpose they combine their property and services. 30 Am. Jur., Joint Adventure, §3, p. 677.

It is true that a right of mutual control over the subject matter of the enterprise or over the property engaged therein is essential to a joint adventure. It is undisputed that Baker had a voice in the management and control of the ferris wheel involved up to June 13, 1952, when he left Allen's employ and both Allen and Baker testified that he retained such control thereafter although he failed to exercise it. The appellants insist however that Baker's right of control prior to June 13, 1952, was exercised by authority of his employment by Allen and not as a joint proprietor of the ferris wheel. We do not think that this necessarily follows. Baker's employment by Allen had to do with Baker United Shows. The ferris wheel, although used in connection with said shows, was no part thereof but was a separate and distinct enterprise for profit in which Baker had a material interest as an individual and not as an employee of Allen. We think the board could have reasonably inferred that any control Baker exercised was exercised in his individual interest and not as Allen's employee.

There is no evidence that the oral contract between Baker and Allen concerning the ferris wheel provided for the sharing of losses as well as profits and this, the appellant's contend, is fatal to the joint adventure theory. There is highly respectable authority, however, that if the nature of the undertaking is such that no losses other than those of time and labor in carrying it out are likely to occur, an agreement to divide the profits may suffice to stamp it as a

joint adventure, although nothing is said about sharing the losses. *Keiswetter* v. *Rubenstein* (1926), 235 Mich. 36, 209 N. W. 154, Anno: 48 A. L. R. 1049. Such is the present transaction. Baker furnished the ferris wheel and Allen furnished the time and labor to operate it. If it couldn't be operated at a profit nothing was lost but time and labor.

The liability of persons engaged in a joint adventure is that of partners. *Diddel* v. *American Security Co.* (1932), 94 Ind. App. 639, 161 N. E. 689. That being true the appellee, while working on the ferris wheel was working for Baker as well as Allen and was his employee as well as Allen's. That was the ultimate fact involved in this litigation and the Board so found.

Award affirmed.

Kelley, J., dissents.

NOTE.—Reported in 132 N. E. 2d 273.