375 P.2d 532

Ramona BOWDEN and dependent children, Rhonda Lee Bowden, Daryl Laurence Bowden, Laurita Kay Bowden, Minors, Claimants-Appellants,

v.

ROBERT V. BURGGRAF CONSTRUCTION CO., Employer,

and

Employers Mutual Liability Insurance Company of Wisconsin, Surety, Defendants-Respondents.

No. 9073.

Supreme Court of Idaho.

Oct. 19, 1962.

Milton E. Zener, of Zener & Anderson, Pocatello, for appellants.

Holden, Holden & Kidwell, Idaho Falls, for respondents.

McQUADE, Justice.

This appeal is taken from an order of the Industrial Accident Board denying death benefits to the widow and three children of the deceased, Ray Orland Bowden. The case involves a claim for death benefits made by a widow on behalf of herself and minor dependent children for death of her husband, who was accidentally killed while at work on the construction of a domestic sewer for the City of Rexburg. The main issues in the case before the Board and presented to this court are: whether the deceased, a construction contractor, was at the time of his death an employee of another contractor, in whose name the sewer job had been bid and awarded, or whether deceased was a joint adventurer with such other contractor.

The Board found that Ray Orland Bowden, age 43 died October 19, 1960, at Rexburg, Idaho, from suffocation, accompanied by a fractured humerus and crushed chest, resulting from an accident; that is, a cave-in of the sewer-trench.

Robert V. Burggraf was licensed as a public works contractor. Burggraf was secured against liability under the Workmen's Compensation Law by Employers Mutual Liability Insurance Company of Wisconsin. It was reported on the claim for compensation, that deceased was an employee of Burggraf at a weekly wage of $150.00. Defendants deny that deceased was an employee.

Bowden, prior to the construction job on which he was accidentally killed, operated

a small contracting business for general excavation work. Bowden employed three or four workmen regularly and on occasions employed others. He had never applied for or received an Idaho public works contractor's license which would have entitled him to bid or work on any type of public contract, either as a contractor or subcontractor, nor had he ever applied for or obtained any type of payment and performance bond. Bowden owned a "backhoe" shovel, tractor, dump truck and other equipment, including hand tools. He carried Workmen's Compensation insurance, employer's liability insurance, held an employer's Social Security Account number, withheld income tax from employees' wages, and made out all necessary employers reports.

When the City of Rexburg advertised for bids on the construction of a sewer system, Bowden became interested. It was a larger job than he had theretofore attempted. He did not have enough money to finance the job. He had no "bonding credit" nor did he have a public works contractor's license. Bowden approached Burggraf to bid on the job. They entered into an agreement concerning the project. This agreement was general in terms. It is with regard to details that uncertainty arises concerning establishing the legal nature of the relationship which existed between the two contractors.

Burggraf on November 9, 1960, signed a statement which included the following paragraphs:

"Exhibit 12, Statement of Robert V. Burggraf" " * * * As Mr. Ray Bowden of Bowden Construction Company, Pocatello, Idaho, had no bonding credit and was unable to obtain a bond, he asked me to bid on a sewer job in Rexburg, Idaho. His proposition was that as I was able to obtain a bond I would bid on the job and he could do the work. His crew would provide the manpower and his equipment would be used exclusively unless it became necessary to bring in some of mine. At the end of the project if there was money available he would receive rental for his equipment and I would receive rental for mine if any of mine had been used. Then any profits remaining would be split evenly between Bowden and me.

"Mr. Bowden and I never had any formal agreement as to just how we would handle the payroll. Nothing was ever discussed about how the crew was to be paid. The first payday would have been two days after Mr. Bowden's fatal injury and we would have come to some agreement then.

"There could not have been a loss on the job as we would merely take less for equipment rental.

"I told Mr. Bowden that he would have to conform with the requirements of the contract as far as Liability insurance and Workmen's Compensation Insurance were concerned and he assured me that he had adequate Liability and Workmen's Compensation insurance. He was set up on his withholding situation for social security. * * *"

They agreed that Bowden would prepare the cost estimates upon which they predicated the bid submitted in Burggraf's name. The city accepted the bid and the job let to Burggraf who executed a performance bond. Bowden and Burggraf agreed that the former would perform the work as required by the contract with the city, that he would perform this work with his own crew and that his equipment would be used exclusively unless it became necessary for Burggraf to bring in additional equipment. Bowden moved his men and equipment onto the job; no equipment of Burggraf's was on the job at the time Bowden had his accident. It had been agreed that materials and supplies for the job would be charged to and paid for by Burggraf who would be reimbursed out of the proceeds received from the job. Prior to Bowden's death there was no understanding as to a salary for Bowden. Bowden was to run the job and Burggraf testified that he wouldn't have interfered unless something drastic happened. Bowden had moved the equipment on Friday, October 14th and started the job on Monday the 17th. On both of these days Burggraf visited Bowden to see if he had moved the equipment and to discuss how he intended to proceed with the work. It was assumed that Bowden would be in charge of the job unless something unforeseen happened. Burggraf made two suggestions to Bowden; to dig the trench wide enough because of the caving conditions and that he should remove a 15 year old boy from the job. Apparently the boy, son of Bowden, was kept on until he entered school. The trench cave-in brought about Bowden's death on October 19th.

There is some conflict in the record. The claim for compensation stated that Bowden was an employee of Burggraf and was working as a superintendent for a weekly wage. Although the wife of Bowden ordinarily kept the books she had not received any time cards on this project. The job had not run a full week from the time it was commenced until Bowden met his death. Burggraf stated that he could have controlled the project, but didn't feel that he had the same control that he had over one of his own superintendents. Mrs. Bowden testified that she and her husband did not have the finances to pay labor and supplies. Burggraf stated that he was obligated to carry out the spirit of the oral agreement after Bowden's demise. Burggraf made a check to Mrs. Bowden as salary earned by her deceased husband. Burggraf also tes-

tified at the hearing before the Board that he was to receive seven per-cent of the gross contract earning plus any actual cash expended. This testimony was different from the above quoted statement, signed by him on November 9th about three weeks following the death of Bowden.

The Industrial Accident Board found that the oral contract between Bowden and Burggraf was one of joint venture, which could be fully consummated only by adjustments of details from time to time as the work progressed. They further found that Bowden was not an employee, but an employer and a joint venturer in the project. Based upon these findings the Board denied an award for compensation. This appeal is from the order as well as from an order denying a petition for reconsideration.

I.C. § 72–1011—"Workman—Employee.—'Workman' is used as synonymous with 'employee' and means any person who has entered into the employment of, or who works under contract of service or apprenticeship with, an employer. * * *"

"The Industrial Accident Board is an administrative and fact-finding body, exercising special judicial functions." Golay v. Stoddard, 60 Idaho 168, 89 P.2d 1002.

In Stearns v. Williams, 72 Idaho 276, 240 P.2d 833, we find the following:

"Whether a relation of joint adventurers exists is primarily a question of fact for the trial court to determine from the facts and the inferences to be drawn therefrom. * * *

"A joint adventure is generally a relationship analogous to but not identical with a partnership, and is often defined as an association of two or more persons to carry out a single business enterprise with the objective of realizing a profit. * * *

"It is immaterial in whose name the property is acquired in a joint venture, as one holding title is a trustee for those who are so engaged in the joint enterprise. * * *

"To constitute a joint adventure the parties may combine their property, money, efforts, skill or knowledge in some common undertaking, and their contribution in this respect need not be equal or of the same character, but there must be some contribution by each joint adventurer of something promotive of the enterprise. * * * and even though one adventurer owns all the property used in the joint adventure, this is not conclusive in determining whether such relationship exists. * * *

"A contract of joint adventure need not be expressed but it may be implied, in whole or in part, from the conduct

of the parties, * * *. Again, even though the details of such joint adventure were shown by indefinite and uncertain testimony, this does not preclude finding that such a joint adventure existed from their acts and conduct, and from the testimony and the inferences that might reasonably be drawn therefrom. * * *

"In a joint enterprise there must be agreement to enter into an undertaking between parties having a unity of interest in the objects or purposes of the agreement, and a common purpose in its performance, * * * while a provision for sharing losses is important in construing an agreement for a joint enterprise, it is not essential, and neither an agreement to share profits nor losses is conclusive in the construction of the contract, but the intention of the parties controls."

■ The fact that there may have been some supervision of work or that it be done in accordance with the contract does not render a person a servant. Laub v. Meyer, Inc., 70 Idaho 224, 214 P.2d 884; Merrill v. Duffy Reed Construction Co., 82 Idaho 410, 353 P.2d 657.

■ Before one can become the employee of another, knowledge and consent of the employer, express or implied, is required. Seward v. State Brand Div., 75 Idaho 467, 274 P.2d 993.

Snyder v. Industrial Commission of Colorado, 138 Colo. 13, 335 P.2d 543, has facts which parallel those with which we have before us. Therein, a cement contractor who was not licensed to build sidewalks contracted for installation of sidewalks, and by agreement with another cement contractor, who had such a license, obtained a permit to perform the work. The contractors did the work together, each paying his respective employees, material bills and then divided the profits. The Colorado Court held them to be engaged in a joint enterprise. See also, Ragos v. Industrial Acc. Commission, 83 Cal.App. 313, 256 P. 487.

Here, it was the rationale of the Board that despite inconsistencies the contractors were joint adventurers according to the definition of Joint Venturer in 30 Am.Jur. 939, Joint Adventurers. This section was cited as authority in Wilson v. Bogert, 81 Idaho 535, 347 P.2d 341. That section quoted in part by the Board herein is as follows:

"A joint venture is an association of persons with intent, by way of contract, express or implied, to engage in and carry out a single business adventure for joint profit, for which purpose they combine their efforts, property, money, skill, and knowledge, but without creating a partnership in the legal or technical sense of the terms, or a corporation, and they agree that there shall be a community of interest among them as

to the purpose of the undertaking, and that each coadventurer shall stand in the relation of principal, as well as agent, as to each of the other coadventurers with an equal right of control of the means employed to carry out the common purpose of the adventure."

 In regard to cases where there is a dispute as to the facts this Court has said: "In workmen's compensation cases, where the facts presented by the testimony of witnesses, stipulation or otherwise, are conflicting, and where facts appear in the record which, if uncontradicted, would be sufficient to support the order appealed from, it will not be reversed on appeal." Knight v. Younkin, 61 Idaho 612, 105 P.2d 456 (citing cases). This principle has been restated in Ohm v. J. R. Simplot Co., 70 Idaho 318, 216 P.2d 952.

 At the request of the Board claimants submitted proposed findings of fact and conclusions of law and an award. Respondents submitted objections thereto. The Board thereafter entered an order without notifying claimants' attorney. Claimants contend that the Board's request for proposed findings and award was announcement of its decision and committed error by thereafter denying an award without further notice to counsel. Claimants filed a petition for reconsideration which was denied by the Board without a formal hearing.

Request for proposed findings of fact, conclusions of law and award is not the final act of the Board contemplated by law.

 The order of the Industrial Accident Board denying compensation to appellants is affirmed. No costs allowed.

SMITH, C. J., and TAYLOR, KNUDSON and McFADDEN, JJ., concur.