412 P.2d 597

**J. A. CLAWSON and Otis G. Hall, Employers, Employers-Appellants,**

**v.**

**GENERAL INSURANCE COMPANY OF AMERICA and Argonaut Insurance Company, Sureties, Sureties-Respondents.**

Thomas M. Mack, Jr., Rodney E. Hall, Harold R. Kennedy, W. Lyle Murphy, Earl L. Peterson, Employees, Claimants.

**No. 9664.**

Supreme Court of Idaho.

March 28, 1966.

Kramer, Walker, Pope & Plankey, Twin
Falls, for appellants.

Kerr & Williams, Blackfoot, for claim-
ant Earl L. Peterson.

Murphy, Schwartz & Cunningham, Twin
Falls, for respondent General Ins. Co. of
America.

Moffatt, Thomas, Barrett & Blanton, Boise, for respondent Argonaut Ins. Co.

McFADDEN, Chief Justice.

The named claimants, while working on the roof of a school building being constructed at Murtaugh, Idaho, sustained injuries on September 30, 1964, when the roof collapsed. Each claimant filed a claim for workmen's compensation benefits; Mack and Peterson listed appellants J. A. Clawson and Otis G. Hall, as their employers, and Hall, Kennedy and Murphy listed Otis Hall Construction Co., as their employer.

The Industrial Accident Board held an investigational hearing, to resolve the dispute between J. A. Clawson and Otis G. Hall, the employers, and their respective sureties, being General Insurance Company of America, (herein referred to as General), as surety for Clawson and Argonaut Insurance Company, (herein referred to as Argonaut), as surety for Hall. The issues before the board at the time of this hearing did not involve the claims of the respective workmen, but only concerned whether the

sureties covered the liability of the employers named.

The board in its decision held that neither surety was liable to the claimants. This holding was premised on the conclusion that the relationship of Hall and Clawson was that of joint venturers, and in that capacity, the liability of their respective sureties was only for their individual employees, and not for employees of the joint venture. The facts leading to this determination by the board are generally without dispute by any of the parties.

Both Clawson and Hall were engaged in the construction business for profit, each doing business as a sole proprietor. On May 18, 1962, Clawson and Hall entered into a written joint venture agreement for the purpose of constructing a Junior High School building in Twin Falls, for which the construction contract had been awarded to Clawson on his bid. This agreement was executed with the Twin Falls Junior High School contract awarded to Clawson in mind, and provided that it was also "for the purpose of future contracts obtained by them [Clawson and Hall] which by future agreement of the parties will be made subject to the terms of this agreement". The agreement provided that profits and losses would be divided equally between the parties, and that:

"The relationship herein established between the parties shall be limited to the performance of any construction contract described hereunder, and this agreement shall be construed to be a joint venture for the sole purpose of carrying out any construction contract hereunder. Nothing herein shall be construed to create a partnership between the parties nor to offer as [sic] either party to act as general agent for the other party, nor to permit either party to bid for or to undertake any other contract for the other party."

On June 22, 1962, a bond of General Insurance Company of America was filed as surety for Clawson and Hall as joint venturers for liability of the joint venture under the workmen's compensation law. This bond was cancelled as of June 11, 1963, and no subsequent bond was filed by the joint venture itself. However, the record disclosed that at the time of the accident, J. A. Clawson, doing business as Clawson Construction Company, was secured by a bond of General, effective April 1, 1963, and Otis G. Hall, doing business as Otis Hall Construction Company, was secured by bond of Argonaut, effective from August 23, 1964. Thus, at the time of the accident, both members of the joint venture had sureties, but the joint venture itself did not.

The issues presented by appellants' assignments of error are primarily concerned with whether the workmen's compensation sureties of individual members of a joint venture are liable to workmen injured

**428**

while performing services in furtherance of the objects of the joint venture.

It is the contention of the respondent sureties that they are not responsible to the workmen injured in work of the joint venture, as the board found. In support of this contention both of them refer to I.C. § 72–1010, which defines an employer as follows:

" 'Employer,' unless otherwise stated, includes any body of persons, corporate or unincorporated, public or private, and the legal representative of a deceased employer. * * *".

They both contend that a "joint venture" is a legal entity, and that as such, the joint venture of Clawson and Hall was the employer of the claimants and not the individual members of the joint venture. In support of this proposition, both sureties cite the case of Doyal v. Hoback, 75 Idaho 431, 272 P.2d 313. General also asserts that in Carter v. Carter Logging Co., 83 Idaho 50, 357 P.2d 660, it was held that an individual partner is not the employer of a workman injured on a partnership project. Argonaut asserts that under I.C. § 72–1010, a joint venture is a body of persons, the same as a partnership, also citing Carter v. Carter Logging Co., supra. Argonaut also cites the cases of Toenberg v. Harvey, 235 Minn. 61, 49 N.W.2d 578 (1951), and Monson v. Arcand, 239 Minn. 336, 58 N.W. 2d 753 (1953), for the proposition that a partnership is considered as a legal entity. The sureties contend that a joint venture, being a separate entity, is solely responsible to the injured workmen under the provisions of the workmen's compensation law and hence the sureties of the individual members of the joint venture cannot be held.

Appellants Clawson and Hall take the view that a joint venture is not a separate entity, and that members of a joint venture are joint employers and their employees are joint employees, and hence each member of the joint venture is jointly liable with the other members. Appellants further contend, that by reason of the joint relationship of the employers the sureties of the individual employers are liable to the injured workmen. In support of this contention, appellants cite the following cases: Industrial Commission of Colorado v. Lopez, 150 Colo. 87, 371 P.2d 269 (1962); W. B. Johnson Grain Co. v. Self, 344 P.2d 653 (Okl.1959); Baker v. Billingsley, 126 Ind. App. 703, 132 N.E.2d 273 (1956); Del Peso v. H. A. Bar and Restaurant Co., Inc., 75 N.J.Super. 108, 182 A.2d 373 (1962).

In Monson v. Arcand, 239 Minn. 336, 58 N.W.2d 753 (1953), the plaintiff Monson, an employee of a partnership of which defendant Arcand was a partner, brought a damage action against defendant Arcand for injuries arising from Arcand's negligent operation of a truck. The Supreme Court of Minnesota held that the partnership, not

the partner, was Monson's employer; that since the defendant Arcand did not attempt to show that he, as an individual separate and apart from partnership, employed anyone, the provisions of the workmen's compensation act limiting negligence liability of third persons was not applicable.

In Toenberg v. Harvey, 235 Minn. 61, 49 N.W.2d 578 (1951), Toenberg was injured while working for the Hillcrest Inn, a partnership comprised of Harvey and his wife, which business was insured with Preferred Accident Insurance Company of New York. At the same time Harvey was also operating a timber operation as an individual which business enterprise was insured with Employers Mutual Liability Insurance Company. Harvey reported Toenberg's accident to the Employers Mutual, which paid the claim. The Supreme Court of Minnesota held that the partnership operating the Hillcrest Inn was an entity separate and apart from the individual members, and that Toenberg was an employee of the partnership, not of the individual member in the logging business. That court reasoned that under the statute defining an employer under the workmen's compensation act which read: "The term 'employer' means every person who employs another to perform a service for hire and to whom the 'employer' directly pays wages, and includes any person, corporation, copartnership, or association, or group thereof, * * *". "* * * a copartnership is a legal entity for purposes of determining liability under the workmen's compensation act to persons not members of such partnership." That court also quoted from its prior case of Gleason v. Sing, 210 Minn. 253, 256, 297 N.W. 720, 722, as follows.:

"While a copartnership at common law was not considered a distinct entity from the partners composing it, the modern tendency is the other way, i. e., to treat a partnership as an entity distinct from and independent of the individuals composing it. * * * The uniform partnership act * * * has wrought decided changes in the common-law conception of such organizations * * *.

"It is well to remember also that liability under the compensation act arises by virtue of a contractual relationship between the employer and the employe. Here we have no such contract between plaintiff and defendant. Plaintiff was hired, paid, and insured by the partnership only. It was his employer, not defendant. * * * If plaintiff suffered 'injury * * * caused by accident arising out of and in the course of the employment,' he was, as a matter of law, entitled to the benefits and advantages provided by the act. These obligations were cast upon the employer and its insurer, and they as such must meet them."

In several opinions this court has dealt with the nature of joint ventures, i. e., Moon

v. Ervin, 64 Idaho 464, 133 P.2d 933; Stearns v. Williams, 72 Idaho 276, 240 P.2d 833; Bowden v. Robert V. Burggraf Construction Co., 85 Idaho 44, 375 P.2d 532. In those cases the issue was whether the relationship between the respective parties constituted that of a joint venture. In Wilson v. Bogert, 81 Idaho 535, 347 P.2d 341, this court differentiated between a "joint venture" and a "joint enterprise", on the basis that a joint venture is motivated by the expectation of profit, whereas a "joint enterprise" has as its motivation an "undertaking for the mutual benefit or pleasure of the parties".

In Stearns v. Williams, supra, this court stated that a joint venture is analogous to but not identical with a partnership.

In Carter v. Carter Logging Co., 83 Idaho 50, 357 P.2d 660, this court held that a 19 year old single man, a claimant for compensation who lived with his father, was an employee of the partnership of which his father was a member. In that case it was contended that the claimant living in the home with his father was a member of the employer's family, dwelling in his household, and hence could not claim compensation. This court then concluded that being an employee of the partnership against whom the claim was asserted he did not come within the exemption of I.C. § 72–105A, subd. 6.

In Brewster v. McComb, 78 Idaho 228, 300 P.2d 507, a situation similar to that presented in the case of Carter v. Carter was before this court. In the Brewster case, McComb and Brewster as partners, were engaged in a log hauling business, with the Liberty National Insurance Company as their surety. Brewster's 19 year old son, who was residing with Brewster, was injured while driving a truck owned by his father. The board found that the claimant was hired by his father in a separate business, not partnership business, and denied recovery inasmuch as the claimant was a member of the family dwelling.

While the inference to be obtained from these two cases, Carter v. Carter and Brewster v. McComb, supra, is that a partnership stands as an entity separate from the individual members thereof, such issue is not before the court at this time for decision. Even if a partnership may be considered an entity separate from the individual members thereof, this does not necessarily hold true insofar as the joint venturers are concerned, even though this court has stated that the relationship is analogous to but not identical with a partnership. (Stearns v. Williams, supra).

The case of W. B. Johnson Grain Company v. Self, 344 P.2d 653 (Okl.1959), involved a question very similar to the one before this court. Therein the Supreme Court of Oklahoma in considering the issues, pointed to prior cases, and stated:

"A careful reading of Heaton v. Schaeffer, [34 Okl. 631, 125 P. 797, 43

L.R.A.,N.S., 540] supra, will disclose that the principal reason for the conclusion that a partnership was a separate entity, so that an individual judgment establishing primary liabilty could not be rendered, was the statute which made partnership debts joint obligations rather than joint and several. This is patent from the following language in the latter part of the opinion:

"'Many states have by statute made all contracts which were joint at common law both joint and several, and under such statutes an individual judgment can be rendered against one partner on a partnership debt. Our statute with reference to partnership debts make them the joint debts of the partners.'

"* * *

"* * * In the Sand Springs Home cases [Sand Springs Home v. Dail, 187 Okl. 431, 103 P.2d 524; Traders & General Ins. Co. v. Sand Springs Home, 195 Okl. 509, 158 P.2d 1018], we necessarily held either that an action for Workmen's Compensation was in the nature of a tort action, which would create joint and several liability even though the joint adventurer was an entity, or that a joint adventure created only a status and not a distinct entity, so that each joint adventurer was an employer. Since the decision in Traders & General Ins. Co. v. Sand Springs Home, supra, was subsequent to our decision in Fowler v. Brooks [193 Okl. 580, 146 P.2d 304], supra, it must follow that in the Traders & General case the basis for holding the joint adventurers severally liable for Workmen's Compensation was that a joint adventure is not an entity; therefore each adventurer is an employer, and therefore individually liable.

"The exact nature of a joint adventure is rather nebulous. However, it has been generally considered as the creation of a status or relationship between the parties rather than the creation of an independent business entity. (Citing and quoting from 30 Am.Jur. Joint Adventures § 1, p. 938) * * *

"We hold that a joint adventure is not a distinct legal entity separate and apart from the parties composing it."

The reasoning of the Oklahoma court is persuasive here. Under the Uniform Partnership Law, (See: I.C. § 53–301 et seq.,), the liability of the members of the partnership is defined by statute, which was the basis for the conclusion of the Oklahoma court that the partnership has an entity separate from that of the individual members thereof, but no such compelling reason is present with a joint venture.

It is the conclusion of this court that a joint venture is not an entity separate and apart from the parties composing it. See: W. B. Johnson Grain Co. v. Self, supra; Industrial Comm. of Colorado v.

Lopez, 150 Colo. 87, 371 P.2d 269 (1962); Snyder v. Industrial Comm., 138 Colo. 523, 335 P.2d 543 (1959).

Nor is the foregoing conclusion contrary to the decision of this court in Doyal v. Hoback, 75 Idaho 431, 272 P.2d 313, wherein this court affirmed an order of the industrial accident board denying a watchman compensation for injuries he had received. The claimant watchman had been employed by an unorganized group of individuals to care for and watch over their respective floathouses. Claimant sought to have the surety of one Hoback, a member of the group, pay his claim for compensation. The surety denied liability for his claim, pointing out that it had only contracted to insure employees of Hoback in the operation of his variety store. The board found that claimant was a person engaged in a type of domestic service. This court sustained this determination by the board, and also stated:

> "Finally, it is without dispute that claimant was not an employee of the Kellogg Variety Store, and the Hobacks were not his employers. He was employed by the unorganized group of floathouse owners. * * * The insurer of Hoback's variety store employees cannot be made liable for compensation due to an employee of another separate and distinct employer, whose employee it has not insured. Moon v. Ervin, 64 Idaho 464, 133 P.2d 933."

In considering Doyal v. Hoback, it must be kept in mind that this was not a true "joint venture", but was in fact a "joint enterprise", the primary purpose of which was other than a profit motive. See: Wilson v. Bogert, 81 Idaho 535, 347 P.2d 341, as to the distinction between "joint venture" and "joint enterprise". Also in consideration of Doyal v. Hoback, it must be borne in mind that the court had already determined that the facts sustained the determination of the board to the effect that the claimant was engaged in a form of domestic service for which the surety would not in any event have been liable. Thus the discussion as to whether the group was a "separate and distinct employer" was at most dictum.

In any event the case of Doyal v. Hoback, supra, could not be considered as decisive of the issue here for the reason that in the Doyal case, Hoback, the alleged employer who was insured, had a policy covering his employees in conducting a variety store, and claimant Doyal, in his job as a watchman of floathouses was performing services entirely different and remote from the store employees. In the instant case, the contract by which Argonaut insures Hall covers the exact type of work in which the claimants herein were engaged at the time of their injuries. The policy of General insuring Clawson is not a part of the record, although it is on record with the board.

■ The activities of Clawson and Hall in the construction of the Murtaugh school building were of the same type which they individually pursued in their private businesses. The employees of the Murtaugh school building were the employees of the joint venture composed of the two individuals who were engaged in the construction of the building, and the employees on the building must hence be considered as the joint employees of both Clawson and Hall in the performance of the construction business conducted as a joint venture.

The board dismissed both sureties from this proceeding. This was an error, for under the provisions of I.C. § 72–1010, an employer is defined to include not only the immediate employer, but also his or its surety, and I.C. § 72–201 provides for payment of compensation by the employers or the surety. See: Del Peso v. H. A. Bar and Restaurant Co., Inc., 75 N.J.Super. 108, 182 A.2d 373 (1962); Janikowski v. Yardley's of London, Inc., 11 A.D.2d 577, 201 N.Y.S.2d 157 (1960); Robinson v. Younse Lumber Co., 8 La.App. 160; Wigger v. Consumers Cooperative Ass'n, 301 S.W.2d 56 (Mo.App.1957); Reed v. Industrial Accident Commission, 10 Cal.2d 191, 73 P.2d 1212, 114 A.L.R. 720 (1937); New York Indemnity Co. v. Industrial Accident Comm., 126 Cal.App. 37, 14 P.2d 160 (1932); Baker v. Billingsley, 126 Ind.App. 703, 132 N.E.2d 273 (1956).

■ The sureties contend that the claimants were not maintained on the payrolls of either Clawson or Hall and that the wages paid were not incorporated into the audits to determine premiums due under the surety contracts. This, however, is immaterial, for as so aptly stated in Industrial Commission of Colorado v. Lopez, 150 Colo. 87, 371 P.2d 269 at 270 (1962):

> "The contract of insurance which was in effect at the time of the accident stated that the Fund would '* * * pay promptly when due all compensation and other benefits required of the insured by the Workmen's Compensation law.' By the express terms of this contract, the Fund obligated itself to pay any compensation required of Dillie under the Act. Its coverage was co-extensive with his liability as an employer in the cement business. If Dillie extended his operation in engaging in the joint venture, so did the policy extend its coverage. The Fund is in no different position than if Dillie had hired Lopez as part of his own individual business and failed to list him or pay the required premium. The omission by an employer to list or pay a premium upon an employee does not affect the right of the employee to receive compensation from the carrier. See 2 Larson, Workmen's Compensation 92.20."

The order of the Industrial Accident Board dismissing the sureties of Clawson

and Hall from the proceeding is reversed and the cause remanded for further proceedings.

Costs to Appellants.

McQUADE, TAYLOR and SMITH, JJ., concur.

KNUDSON, J., sat at the argument, but retired from office prior to the decision.