Carl E. MILLYARD,
Plaintiff-Appellee-Cross
Appellant,

v.

Edwin CARSON and Mel Carson,
Defendants-Appellants-Cross
Appellees.

Nos. 84–2707, 84–2782.

United States Court of Appeals,
Seventh Circuit.

Argued April 19, 1985.
Decided Aug. 26, 1985.

Jeffrey R. Frank, Law Office of Jeffrey R. Frank, Evansville, Ind., for plaintiff-appellee-cross appellant.

Stephen Hensleigh Thomas, Clark, Statham, McCray, Thomas & Krohn, Evansville, Ind., for defendants-appellants-cross appellees.

Before WOOD and EASTERBROOK, Circuit Judges, and DUMBAULD, Senior District Judge.*

HARLINGTON WOOD, Jr., Circuit Judge.

In this diversity case concerning an oil and gas leasehold under Indiana law the district court granted plaintiff's motion for partial summary judgment, and, after a hearing on damages, entered judgment for plaintiff for $78,674.74 plus attorney's fees and expenses in the amounts of $10,432.00 and $173.00 respectively. The judgment was made final pursuant to Rule 54(b) of the Federal Rules of Civil Procedure. Defendants appeal the summary judgment award and plaintiff cross appeals seeking more attorney's fees.

* The Honorable Edward Dumbauld, Senior District Judge from the Western District of Pennsylvania, is sitting by designation.

## Facts [1]

Sometime prior to 1979 Arnold Lewis, Carl Millyard, the plaintiff, and L. Kathryn Planett each acquired a one-third working interest in an oil and gas lease known as the North Princeton Waterflood Unit in Gibson County, Indiana ("Princeton Unit"). Millyard and Planett were both residents of California and did not actively participate in the day-to-day operation of the leasehold. Lewis, doing business as Lewis Drilling Company, was the operator of the entire working interest, managed the daily affairs with respect to the leasehold, and submitted periodic reports to Millyard and Planett.

In June of 1979 Lewis advised Millyard and Planett that he was shutting down the Princeton Unit and that due to labor problems and declining production it was his opinion that it would be a good time to dispose of the project. He also indicated that he would put out some "feelers" to see what could be done. By letter dated August 17, 1979, Lewis advised Planett that he wished to dispose of his interest by the end of 1979 and inquired as to whether she would be interested in selling if he could make a deal for $300,000.

Although it is not clear as to when they began, Lewis and the defendants, the Carsons, subsequently entered into negotiations for the sale and purchase of the Princeton Unit. Apparently, during the period of negotiations Lewis was in contact with both Millyard and Planett regarding the sale of their interests, and it appears that both were giving the matter consideration at that time.

In January, 1980 negotiations on the Princeton Unit had been finalized. Lewis and the Carsons entered into an agreement for the sale of the oil and gas leasehold on January 18, 1980. Pursuant to the terms of the agreement Lewis agreed to sell his one-third working interest in the Princeton

1. This factual summary is adapted substantially from the memorandum of the district court entered on July 18, 1984.

Unit. They agreed upon a purchase price of $300,000 for the entire working interest in the Princeton Unit. They also agreed that Lewis would assist the Carsons in acquiring the remaining two-thirds interest in the Princeton Unit, and, in the event that the remaining two-thirds interest could not be acquired, the agreement could be terminated.

All parties concede that Millyard had no contact with the Carsons during the negotiations or at the consummation of the sale. Lewis apparently negotiated the sale price, was involved in establishing what would be acceptable terms and conditions of sale, and his attorney prepared the assignment forms and the promissory notes. In a letter dated January 28, 1980 Lewis's attorney submitted the assignments and the promissory notes to Lewis, Millyard, Planett, and the Carsons for their review and approval. Around the first of February the assignments and promissory notes with respect to Lewis's and Millyard's interests were executed. Planett however declined to sell her interest. Thereafter, the Carsons made the initial payment and the first of the installment payments pursuant to the promissory notes. They failed, however, to pay the February, 1982 installment when it became due. Millyard, through his attorney, then made written demand for payment of the outstanding amount due under the promissory note and when the Carsons failed to respond Millyard brought this suit.

The Carsons filed an answer to the complaint raising the affirmative defenses of fraud in the inducement and failure of consideration. The Carsons also filed a counterclaim seeking cancellation of the agreement for sale of the interests, restoration of the purchase price, and compensatory damages. The Carsons also filed a third-party complaint against Lewis seeking indemnity in the event that they were held liable to Millyard on the promissory note. The Carsons' defenses and counterclaim are based on the fact that Lewis allegedly misrepresented the production of the Princeton Unit. The Carsons concede that Millyard played no active role in the negoti-

ations or sale and made no representations concerning the Princeton Unit. It is essentially the Carsons' position that Millyard is vicariously or derivatively subject to the defenses raised in the answer and counterclaim either because Millyard and Lewis were acting as joint venturers or because Lewis was acting as Millyard's agent in n egotiating and finalizing the sale of Millyard's interest. Thus, according to the Carsons, the alleged misrepresentations made by Lewis concerning the condition and the production on the lease-hold which were discovered by the Carsons after entering into possession are attributable to Millyard because of the nature of the relationship between Millyard and Lewis.

Millyard filed a motion for partial summary judgment contending (1) that there were no issues of material fact as to the Carsons' obligation on the promissory note since there was no dispute as to the authenticity of the note, and (2) that based upon the facts presented the defenses raised in the answer and counterclaim were wholly without merit. Millyard's position is that no facts were presented which would indicate that Lewis and Millyard were involved in a joint venture or that Lewis was an agent for Millyard during the sale thereby subjecting Millyard to liability for Lewis's alleged misrepresentations. The Carsons argue that numerous questions of fact remain as to whether Lewis and Millyard were involved in a joint venture. In support of their position that Lewis was Millyard's agent, they point to the facts that Millyard and the Carsons had no contact prior to the sale and that Lewis "handled" the entire transaction.

### Indiana Law

The court granted summary judgment for plaintiff Millyard on the basis that Lewis was not an agent for Millyard nor were Millyard and Lewis engaged in a joint venture.

The court's agency determination was based entirely on an interpretation of the Indiana statute which provides generally that no person may be authorized to act as

an agent for another to convey real estate or any interest therein without being authorized to do so by an instrument in writing signed and acknowledged by the person granting the authority. Ind.Code § 32–1–10–1.[2] Interests in oil and gas leases are by Indiana statute considered as estates in land and treated the same as other interests in real estate. Ind.Code § 32–5–7–1 *et seq.*

Interpreting the Indiana statutes to mean that Lewis could not act as an agent for Millyard in the sale of Millyard's oil interest without having the authorization in writing, the district court held that there was no agency relationship between the Carsons and Lewis since the Carsons did not claim that there was any authorization in writing. The court also pointed to the following additional factors supporting its finding that no agency existed: (1) the existence of an agreement between Lewis and the Carsons which required Lewis to "assist" the Carsons in acquiring all the interests in the unit; (2) the fact that although it was Lewis's attorney who prepared the assignments and promissory notes, they were submitted to each of the parties independently for approval; and (3) the fact that both Lewis and Millyard submitted affidavits that no agency existed. The district court therefore concluded that Lewis was a mere "accommodator," and could not, based on the Indiana statute, have been more.

Although we hesitate to interpret and apply the Indiana statutes differently than does the experienced district judge in Indiana, we do not believe that section 32–1–10–1 has any application to this case. The section has a common and necessary purpose: to ensure that when a person purports to sell, release, or convey real estate for some other person "as attorney-in-fact," that he have authority in writing and signed by the person granting the authority. This section does not apply to a situation such as this, where one person simply undertakes to find a buyer for another, but does not undertake to actually convey that interest on behalf of the owner to the buyer he has found. The Carsons do not claim that Lewis was an attorney-in-fact with power to sell, release, or convey the oil interest, but was more in the nature of a real estate broker. In Indiana, that type of broker relationship does not have to be in writing, although a written contract may be customary. *Brown v. Poulos*, 411 N.E.2d 712, 714 (Ind.Ct.App.1980).

Millyard attempts to avoid *Brown* by arguing that whereas in *Brown* the oral agreement was between the landowner and a licensed real estate broker, here the Carsons do not claim that Lewis was a licensed real estate broker. The *Brown* case need not be read so narrowly as it is nothing more than the application of the well-settled rules of agency. Whether the person seeking a buyer for his own interest and that of his co-owners has a real estate

2. Indiana Code section 32–1–10–1 provides in detail:

No person or persons shall be authorized to sell, release, or convey real estate or any interest therein, as attorney-in-fact of another, nor to make any deed, mortgage, or other paper entitled to record as such attorney-in-fact, or to transfer, assign, release, or satisfy in whole or in part any mortgage, lease, mechanic's lien, or any other instrument which is on record in the recorder's office, involving the signing of the name or names of the person, persons, or corporation executing the same, or to whom the same is executed, without being authorized so to do by an instrument in writing duly signed and acknowledged, by the person, persons, or corporation granting such authority, particularly setting forth and specifying the power or authority given, granted, and conferred to be known as a power of attorney, which shall be duly recorded in the office of the recorder of the county or counties where such business is to be transacted, or acts authorized to be executed, and shall by the recorder be recorded in the miscellaneous records of his office, and when after such record, the party shall do, execute, or perform any act, power to do which is conferred by such power of attorney, the party conferring the power shall be bound thereby as to all such acts done and performed prior to notice of revoking of such authority, which notice may be given by a memorandum thereof entered on the margin of the record of such power of attorney, duly attested by the recorder, or by copy of a duly acknowledged memorandum entered and attested as aforesaid.

broker's license is in our view immaterial. The brokers' licensing requirements are imposed by statute on those holding themselves out to the public as being engaged in the real estate brokerage business.

■ Therefore the Indiana statute does not support summary judgment for Millyard, and the question whether an agency relationship existed is an issue of fact unsuitable for summary judgment disposition.

The district court, also by summary judgment, ruled out the Carsons' joint venture theory, although neither party could assist the court with any Indiana authority. The district court, relying on 46 AM.JUR.2D *Joint Ventures* § 21 (1969), conceded that persons who act together to pay portions of the purchase price for an oil and gas lease may be engaged in a joint venture, but also found that the mere purchase of a lease by several persons, without more, does not establish a joint venture, only joint ownership. *Id.* at § 21, p. 44. The district court found that even though Millyard and Lewis both owned a share in the oil lease, and that Lewis operated it for Millyard and himself, that there could be no joint venture since it could not be seen that Millyard performed any activity which could be deemed an exercise of control so as to constitute a joint venture. *Baker v. Billingsley,* 126 Ind.App. 703, 132 N.E.2d 273, 276 (1956) (en banc).

Even so we do not believe the joint venture issue is suitable for resolution by summary judgment.

The relationship of the sellers is more than that of co-ownership; as one of them, Lewis was on the scene operating the oil lease for the benefit of all of them and undertook to advise and to help all of his co-owners in disposing of their interests.

Plaintiff cross appealed complaining that the attorney's fees allowed by the district court were not sufficient. That issue is not ripe for decision since we hold that neither side is yet the victor in this litigation.

We reverse and remand for further proceedings consistent with this opinion. Circuit Rule 18 shall not apply.