573 F.2d 609
 Helen HOUSE et al., Plaintiffs,
v.
MINE SAFETY APPLIANCES COMPANY, a corporation, et al., Defendants.
Helen HOUSE et al., Plaintiffs-Appellants,
v.
MINE SAFETY APPLIANCES COMPANY, a corporation, et al., Defendants,
United States of America, Defendant-Appellee.
Helen HOUSE et al., Plaintiffs,
v.
MINE SAFETY APPLIANCES COMPANY, a corporation, et al., Defendants.
PVO INTERNATIONAL, INC., a California Corporation and
Polytron Company, also known as Polyco Liquidating
Corporation, a California Corporation,
Third-Party Plaintiffs-Appellants,
v.
SILVER DOLLAR MINING COMPANY, an Idaho Corporation, Polaris
Mining Company, a Delaware Corporation, Hecla Mining
Company, a Washington Corporation, Big Creek Apex Mining
Company, an Idaho Corporation, Silver Surprize, Inc., an
Idaho Corporation, Sunshine Consolidated, Inc., an Idaho
Corporation, Silver Bismarck Mining Company, an Idaho
Corporation, Metropolitan Mines Corporation Limited, an
Idaho Corporation, et al., Third-Party Defendants-Appellees.
Sandra NORRIS et al., Plaintiffs,
v.
MINE SAFETY APPLIANCES COMPANY, a corporation, et al., Defendants,
United States of America, Defendant-Appellee.
Sandra NORRIS et al., Plaintiffs,
v.
MINE SAFETY APPLIANCES COMPANY, a corporation, et al., Defendants.
PVO INTERNATIONAL, INC., a California Corporation and
Polytron Company, now known as Polyco Liquidating
Corporation, a California Corporation,
Third-Party Plaintiffs-Appellants,
v.
SILVER DOLLAR MINING COMPANY, an Idaho Corporation, Polaris
Mining Company, a Delaware Corporation, Hecla Mining
Company, a Washington Corporation, Big Creek Apex Mining
Company, an Idaho Corporation, Silver Surprize, Inc., an
Idaho Corporation, Sunshine Consolidated, Inc., an Idaho
Corporation, Silver Syndicate, Inc., an Idaho Corporation,
Bismarck Mining Company, an Idaho Corporation, Metropolitan
Mines Corporation Limited, an Idaho Corporation, et al.,
Third-Party Defendants-Appellees.
Arjvell E. FOWLER, Plaintiff,
v.
MINE SAFETY APPLIANCES COMPANY, a corporation, et al., Defendants.
PVO INTERNATIONAL, INC., a California Corporation and
Polytron Company, also known as Polyco Liquidating
Corporation, a California Corporation,
Third-Party Plaintiffs-Appellants,
v.
SILVER DOLLAR MINING COMPANY, an Idaho Corporation, Polaris
Mining Company, a Delaware Corporation, Hecla Mining
Company, a Washington Corporation, Big Creek Apex Mining
Company, an Idaho Corporation, Silver Surprize, Inc., an
Idaho Corporation, Sunshine Consolidated, Inc., an Idaho
Corporation, Silver Syndicate, Inc., an Idaho Corporation,
Bismarck Mining Company, an Idaho Corporation, Metropolitan
Mines Corporation Limited, an Idaho Corporation, et al.,
Third-Party Defendants-Appellees.
SUNSHINE MINING COMPANY, a corporation, Plaintiff,
v.
UNITED STATES of America et al., Defendants.
PVO INTERNATIONAL, INC., a California Corporation and
Polytron Company, also known as Polyco Liquidating
Corporation, a California Corporation,
Third-Party Plaintiffs-Appellants,
v.
SILVER DOLLAR MINING COMPANY, an Idaho Corporation, Polaris
Mining Company, a Delaware Corporation, Hecla Mining
Company, a Washington Corporation, Big Creek Apex Mining
Company, an Idaho Corporation, Silver Surprize, Inc., an
Idaho Corporation, Sunshine Consolidated, Inc., an Idaho
Corporation, Silver Syndicate, Inc., an Idaho Corporation,
Bismarck Mining Company, an Idaho Corporation, Metropolitan
Mines Corporation Limited, an Idaho Corporation, et al.,
Third-Party Defendants-Appellees.
Anthony Charles Vanier HARDEN et al., Plaintiffs,
v.
UNITED STATES of America et al., Defendants.
PVO INTERNATIONAL, INC., a California Corporation and
Polytron Company, now known as Polyco Liquidating
Corporation, a California Corporation,
Third-Party Plaintiffs-Appellants,
v.
SILVER DOLLAR MINING COMPANY, an Idaho Corporation, Polaris
Mining Company, a Delaware Corporation, Hecla Mining
Company, a Washington Corporation, Big Creek Apex Mining
Company, an Idaho Corporation, Silver Surprize, Inc., an
Idaho Corporation, Sunshine Consolidated, Inc., an Idaho
Corporation, Silver Syndicate, Inc., an Idaho Corporation,
Bismarck Mining Company, an Idaho Corporation, Metropolitan
Mines Corporation Limited, an Idaho Corporation, et al.,
Third-Party Defendants-Appellees.
 Nos. 75-3079, 76-1788, 76-1789 and 76-2650.
 United States Court of Appeals,
Ninth Circuit.
 April 14, 1978.
 
 Jack R. Ormes, of Moyle & Draper, Los Angeles, Cal., Phalen G. Hurewitz, Beverly Hills, Cal. (argued), for plaintiffs.
 John G. Laughlin, Dept. of Justice, Washington, D. C., Leonard Schaitman (argued), Dept. of Justice, Washington, D. C., for defendants.
 Appeal from the United States District Court for the District of Idaho.
 Before WALLACE and SNEED, Circuit Judges, and BOLDT,* District Judge.
 SNEED, Circuit Judge:
 
 
 1
 These consolidated appeals come to us out of the litigation arising from the Sunshine Mine fire on May 2, 1972, in Kellogg, Idaho, in which over 90 miners died. The initial plaintiffs in this complex litigation were surviving relatives of those miners killed in the fire. Named as defendants in this wrongful death action were the United States, a number of companies involved in the manufacture and sale of a kind of polyurethane foam used in the mine, and others involved in the manufacture and use of self-rescue units used in the mine. Among these defendants were Polytron and PVO International, Inc., manufacturers of polyurethane foam. So far as the record reveals the Sunshine Mining Company was not named as a defendant in this initial suit.
 
 
 2
 After this initial suit had been filed, other suits were also instituted. Among these additional filings was a suit by Sunshine Mining Company, as plaintiff, seeking to recover for property damage to the mine and loss of profits. Another suit was brought on behalf of several insurance companies seeking recovery of moneys paid to Sunshine Mining Company for the property damage suffered in the fire. Included among the defendants in these suits were PVO and Polytron. These actions were then consolidated with the original wrongful death action.
 
 
 3
 PVO and Polytron then filed third party complaints in all the consolidated actions against eight small mining companies associated with the Sunshine Mining Company, seeking contribution or indemnity from them if PVO and Polytron should be found liable. These eight small companies, who were not named as defendants in any of the original actions, will be referred to as third-party defendants.
 
 
 4
 The District Court has jurisdiction of the actions against the United States by virtue of 28 U.S.C. § 1346. Diversity of citizenship is the basis of the federal court jurisdiction over the other causes of action. 28 U.S.C. § 1332.
 
 
 5
 On this appeal we must decide whether 60 plaintiffs were properly dismissed from the action against the United States for failure to comply with the administrative claim requirement of the Federal Tort Claims Act and whether summary judgment was properly entered in favor of the third-party defendants who claimed the benefit of the immunity clause of the Idaho Workmen's Compensation Act. Our resolution of these issues requires that we affirm in part, reverse in part, and remand in part.
 
 
 6
 I. Administrative Claim Requirement.
 
 
 7
 The complaint against the United States charges that the United States Department of the Interior, Bureau of Mines, was negligent in inspecting and enforcing safety standards at the Sunshine Mine. Suit was brought pursuant to the Federal Tort Claims Act, 28 U.S.C. § 2671 et seq., (FTCA), which is a waiver of sovereign immunity in those cases "where the United States, if a private person, would be liable to the claimant in accordance with the law of the place where the act or omission occurred." 28 U.S.C. § 1346(b).
 
 
 8
 The FTCA provides that "(a)n action shall not be instituted upon a claim against the United States for money damages for . . . death caused by the negligent or wrongful act or omission of any employee of the Government while acting within the scope of his office or employment, unless the claimant shall have first presented the claim to the appropriate Federal agency and his claim shall have been finally denied by the agency in writing . . . ." 28 U.S.C. § 2675(a). The Ninth Circuit has explicitly held that this administrative claim requirement is jurisdictional in nature and cannot be waived. Blain v. United States, 552 F.2d 289 (9th Cir. 1977). Therefore, unless we find that proper administrative claims were filed for the 60 plaintiffs before us on this appeal, the order of dismissal must be upheld.
 
 
 9
 A. Facts.
 
 
 10
 A document labeled "Notice of Claim" was filed with the Department of Interior by Jack Ormes, an attorney, on December 29, 1972. This document set forth a description of the accident and the alleged negligence of the Bureau of Mines. In addition, specific claims for $1,000,000 in damages per family were made on behalf of certain named members of the families of 50 of the miners. This Notice of Claim was signed by Mr. Ormes. After this document was received, the Department of the Interior requested that a Standard Form 95 (SF 95) be filed for each claimant. A single SF 95 was prepared for each family, with the surviving spouse and children listed in space # 2 labeled "Name of Claimant." A line was drawn through the rest of the form. At the bottom of each form there was a notation reading "See Notice of Claim submitted by Jack R. Ormes, Attorney at Law." Most of the SF 95s were signed by the surviving widow, though some were signed by Mr. Ormes. Attached to some of the SF 95s were survivors lists, containing the names of all family members, including some adult children who were not listed in the claimant space on the form itself.
 
 
 11
 After the Notice of Claim had been filed, other families apparently contacted Mr. Ormes. SF 95s were filed for these additional families. Again, the form was left blank except for the name of the claimants and the notation to "See Notice of Claim submitted by Jack R. Ormes, Attorney at Law." However, the Notice of Claim contained no mention of either the decedent of any of these claimants or any of the claimants themselves.
 
 
 12
 Since no action was taken on these claims by the Department of the Interior within the six month time period specified by 28 U.S.C. § 2675, the claimants were justified in treating this inaction as a final denial of their claims. Complaints were then filed in the United States District Court for the District of Idaho. The list of plaintiffs included some persons who were not included on either a SF 95 or the Notice of Claim and some who were listed on only one of these documents. In two separate motions the government requested that 60 plaintiffs be dismissed because of their alleged failure to file proper administrative claims. The District Court granted this motion.
 
 
 13
 Appellants, the 60 plaintiffs dismissed from the suit against the United States, can be grouped into five categories. The first and largest group (Group 1) consists of those appellants listed on a SF 95 as a claimant or survivor, but whose families are not listed on the Notice of Claim.[1] The second group (Group 2) consists of those appellants who were named neither in the Notice of Claim nor a SF 95, but whose mothers filed a SF 95.[2] The third category (Group 3) is composed of two people who were listed only as survivors on a SF 95 filed by their respective mothers, and whose mothers were listed on the Notice of Claim.[3] A fourth group (Group 4) consists of those individuals who were listed on the Notice of Claim, but who never filed a SF 95.[4] A final group (Group 5) consists of children listed as claimants on a SF 95, whose mothers are listed on the Notice of Claim.[5]
 
 
 14
 B. Incorporation by Reference.
 
 
 15
 Group 1 is seeking to use the doctrine of incorporation by reference to establish that they filed complete administrative claims. The SF 95s filed by Group 1 appellants contained only the names and the notation to "See Notice of Claim." Unless the incorporation of the Notice of Claim is effective, these claims are clearly incomplete.
 
 
 16
 We agree with Group 1 appellants that incorporation by reference can be used in presenting an administrative claim. See Molinar v. United States,515 F.2d 246, 249 (5th Cir. 1975). There is no requirement that an administrative claim be presented solely on a SF 95. Rather, the regulations explicitly allow "an executed Standard Form 95 or other written notification." 28 C.F.R. § 14.2(a) (1977). Thus we read these claims to incorporate the Notice of Claim.
 
 
 17
 However, we are unable to agree with appellants that incorporation of the Notice of Claim supplies "a claim for money damages in a sum certain" as required by 28 C.F.R. § 14.2(a). This requirement has been strictly enforced by the courts. Caton v. United States, 495 F.2d 635 (9th Cir. 1974) (listing damages as unknown inadequate); Bialowas v. United States, 443 F.2d 1047 (3d Cir. 1971) (estimated damages inadequate). Just recently this circuit has ruled that a class claim for damages is inadequate to state a sum certain for the damages suffered by the individual filing the claim. Caidin v. United States, 564 F.2d 284, 287 (9th Cir. 1977).
 
 
 18
 In the instant case the amount claimed by each family listed on the Notice of Claim was stated separately. Since none of the families in Group 1 was included on the Notice of Claim, there is no amount which explicitly can be incorporated from the Notice. The appellants argue, however, that since each of the families listed on the Notice of Claim claimed $1,000,000 in damages, it is clear from their reference to the Notice of Claim that they also intended to claim $1,000,000 in damages per family.
 
 
 19
 We are not convinced. Damages properly reflect an individualized determination of losses suffered. Families in differing economic circumstances would be expected to suffer differing damages for the wrongful death of the breadwinner. The mere fact that all the families listed on the Notice of Claim demanded $1,000,000 does not mean that all other families who later choose to file claims would also claim a similar amount. To constitute "a claim for money damages in a sum certain" either the document incorporating another or the incorporated document must set forth a sum certain claim of damages explicitly applicable to the claimant or group of claimants. Thus, had the $1,000,000 figure been set forth explicitly on the SF 95, or had the Notice of Claim provided that the $1,000,000 demand was applicable to all SF 95s that incorporated the Notice, the sum certain claim requisite would have been met. Neither circumstance existed in this case.
 
 
 20
 We recognize that government employees in the Department of the Interior docketed the claims of Group 1 families at a value of $1,000,000. This circuit has held, however, that "some undefined principle of estoppel" will not operate to prevent the government from asserting jurisdictional requirements. Powers v. United States, 390 F.2d 602, 604 (9th Cir. 1968). We also note that this circuit has consistently rejected the argument that mere notice to the government of an accident and injury is sufficient to satisfy the administrative claim requirement. Avril v. United States, 461 F.2d 1090 (9th Cir. 1972). Thus, the government's interpretation of imprecise documents in the manner intended by the appellants does not affect our task of determining whether the administrative claim requirement has been met. We hold, therefore, that the appellants in Group 1 failed to include a sum certain claim for damages in their administrative claims and so were properly dismissed.
 
 
 21
 Our disposition of the arguments presented by Group 1 also mandates the result for Group 2. Assuming arguendo that the claims of these children were adequately presented by the claims filed by their mothers, there still would be a failure to state a sum certain because no one in the families represented by Group 2 was listed on the Notice of Claim and the only information contained on the mothers' SF 95 was a notation to "See Notice of Claim." Nowhere was a sum certain claim explicitly linked to the mothers of these children. Thus, the order of dismissal as to Group 2 must also be affirmed.
 
 
 22
 C. Requirement That Individual Claims Be Filed.
 
 
 23
 Group 3 consists of two adult children who were not listed as claimants on the SF 95 filed by their respective mothers, but were included on an attached list of "survivors." Both their mothers were listed on the Notice of Claim, so incorporation by reference can be used to provide a sum certain claim for damages for each of these families. The explicit link exists provided the SF 95s are adequate. In making this determination, we are not particularly concerned by the fact that they were listed as survivors rather than claimants on their mothers' SF 95. Rather the underlying issue presented here is whether adult claimants must file an individual claim or whether they can be effectively included in a claim filed by their mother.
 
 
 24
 We recognize that state law determines who may present a claim based on death. 28 C.F.R. § 14.3(c). Idaho law provides that the right to bring a wrongful death action belongs to the heirs of the decedent. Idaho Code § 5-311. Heirs are defined to include the surviving spouse and issue. Idaho Code §§ 15-2-102 & 15-2-103. These Idaho statutes have been interpreted as providing a joint and indivisible cause of action for the heirs. Campbell v. Pacific Fruit Express Company, 148 F.Supp. 209, 211 (D.Idaho 1957).
 
 
 25
 We do not think, however, that Campbell authorizes a single heir to file an action on behalf of all others. On the contrary, the Campbell court dismissed the action because of the failure to join all the heirs.[6] The fact that each heir is an indispensable party in a wrongful death action does not dispose of the issue whether the parent has inherent authority to file an administrative claim on behalf of an adult child. However, it does suggest that the parent lacks full power to litigate such actions on behalf of adult children. In view of this limitation, but mindful of the absence of precise Idaho authority, we believe it is more consistent with Idaho law and the purposes of the requirement of an administrative claim to hold that the parent has no inherent authority to file an administrative claim on behalf of an adult child.
 
 
 26
 The claim requirement was designed to provide the government with accurate information as to the settlement value of the case.[7] The number of heirs who can claim damages for the death is obviously an important factor in determining the value of the claim. However, only those heirs who will participate in the suit need be considered in ascertaining damages. Requiring individual administrative claims will provide the government with more accurate information as to the number of heirs who are interested enough to pursue the action and so should be considered in figuring the settlement value.[8]
 
 
 27
 Family claims filed by the mother should be measured against the principles which invalidated the class administrative claim in Caidin v. United States, supra and Commonwealth of Pennsylvania v. National Association of Flood Insurers, 520 F.2d 11 (3d Cir. 1975). In Caidin we held that a class administrative claim was not valid unless there was a contemporaneous assertion of authority for the class representative to act for each of the class members. Similarly, we think that before one family member can present a joint claim on behalf of all adult members of the family, there must be a showing that such person is authorized to represent such other members.
 
 
 28
 Because the record discloses no evidence indicating that the Group 3 appellants authorized their mothers to act for them, we shall remand to the district court for a determination as to whether such authority existed at the time the claims were filed.
 
 
 29
 D. Authority of Attorney to File Notice of Claim.
 
 
 30
 The Group 4 appellants appear only on the Notice of Claim and insist that it alone is a valid administrative claim. We agree that any "written notification of an incident, accompanied by a claim for money damages in a sum certain" constitutes a valid administrative claim. 28 C.F.R. § 14.2(a). The Notice of Claim filed here provides such information. The problem Group 4 encounters is that the Notice of Claim is signed only by Ormes, the attorney. There is no indication in the record that Ormes had any authority to represent Group 4 appellants. In this respect Group 4's problem is identical to that of Group 3.
 
 
 31
 As already indicated, the claim must "be presented in the name of the claimant, be signed by the agent or legal representative, show the title or legal capacity of the person signing and be accompanied by evidence of his authority to present a claim on behalf of the claimant as agent, executor, administrator, parent, guardian or other representative." 28 C.F.R. § 14.3(e).
 
 
 32
 Somewhat surprisingly the government did not argue that the failure to show Ormes' authority invalidated the administrative claims of Group 4. Instead, the government agreed to accept reinstatement of this group. As noted above, however, the administrative claim requirement is jurisdictional and the government is powerless to waive it. A proper claim must be filed and denied before there is any federal court jurisdiction to hear these actions.[9]
 
 
 33
 Therefore, in a manner similar to our disposition of Group 3, we must remand to the district court for a determination of whether Ormes was indeed authorized to represent Group 4 appellants at the time the Notice of Claim was filed. Unless the district court is presented with evidence documenting this authority, the order dismissing these appellants must also be affirmed. Our remand with respect to Groups 3 and 4 is not a strict application of 28 C.F.R. § 14.3(e), for such would require us to dismiss their claims. We have softened its vigor because these two groups present problems not previously considered by this court and because, with respect to Group 4, the government's reinstatement of their claims indicates that any failure to comply was not prejudicial to the government. This departure from the literal language of the regulation does not indicate a willingness to treat the failure of the agent executing the administrative claim (1) to show his "title or legal capacity" and (2) to accompany the claim with "evidence of his authority" to present such claim as merely technical defects. Such a failure, in the absence of unusual and extenuating circumstances such as exist in this case, deprives the court of jurisdiction to hear the suit. We expressly disapprove of Hunter v. United States, 417 F.Supp. 272 (N.D.Cal.1976) to the extent that it can be interpreted as holding to the contrary.
 
 
 34
 E. Authority of Parents to File For Minor Children.
 
 
 35
 The final group of appellants, Group 5, consists of children who were listed as claimants on a SF 95 prepared by their mothers, but who were not individually listed on the Notice of Claim. Their mothers, however, were listed on the Notice of Claim as having a $1,000,000 claim. Thus, there exists the explicit link which is required and the incorporation by reference of the Notice of Claim was effective to state a sum certain claim for the family group. However, the SF 95s were signed by the surviving spouse in each case and the children did not individually and separately present their claims.
 
 
 36
 If any of the children in this group are adults, their situation would be indistinguishable from that of Group 3. It appears, however, that at least some of the children in this group are minors. We hold that since the parent has inherent authority to represent the interests of a minor child, a joint claim filed by a mother on behalf of her children is appropriate. The parent of a minor child is a "person legally entitled to assert a claim for (wrongful death) in accordance with applicable state law. 28 C.F.R. § 14.3(c). Idaho Code § 15-1-403(b)(2) provides that a parent may represent and bind his minor child in judicial proceedings. Since the parent is the automatic legal representative of the child once the issue progresses to the litigation stage, it would be inappropriate to require a recitation of the minority of the children and the applicable state law at the administrative claim stage. The government's ability to settle the case is not hampered by not requiring these recitations inasmuch as the parents can accept a settlement for the child. We remand to the district court for a determination as to which of these appellants are minors and so entitled to reversal of the order of dismissal entered against them. With respect to those not minors the district court must determine, as it must with respect to Group 3, whether at the time the claims were filed their respective mothers had authority to file for them.
 
 
 37
 II. Third Party Actions.
 
 
 38
 As already mentioned, consolidated with the appeal from the dismissal of the 60 plaintiffs is an appeal from an order of summary judgment in favor of the third party defendants, the eight small mining companies. This appeal requires us to determine whether the third party defendants are employers under the terms of the Idaho Workmen's Compensation Act and so entitled to immunity from tort liability and whether they are proper third party defendants in the action brought by Sunshine Mining Company.
 
 
 39
 A. Facts.
 
 
 40
 It will be recalled that, in addition to their claims against the United States under the FTCA, the plaintiffs named other defendants in this action, including PVO International, Inc. and Polytron Company, manufacturers of a polyurethane foam which had been installed in the mine and allegedly contributed to the quick spread of the fire. Additionally, Sunshine Mining Company and its insurance carrier filed actions against these defendants, seeking to recover for the property damage and loss of profits suffered by the mine as the result of the fire. PVO and Polytron then filed third party complaints in all these actions seeking contribution and indemnity from eight small companies which own mining claims in the Sunshine Mine complex. These claims were being worked by the Sunshine Mining Company. The third party complaints allege that these small companies had a duty to see that their claims were being operated safely and that the failure to fulfill this duty was the proximate cause of plaintiff's damages.
 
 
 41
 The third party defendants moved for summary judgment on all counts. As to the wrongful death claims, the third party defendants argued that they are employers and thus immune from tort liability under the exclusivity provisions of the Idaho Workmen's Compensation Act. In the property damage action brought by Sunshine Mining Company, the third party defendants argued that their interests are so closely allied with those of Sunshine that they should be treated as plaintiffs and not third party defendants. The district court granted summary judgment on all counts. We reverse as to the wrongful death claims and affirm as to the property damage action.
 
 
 42
 B. Idaho Workmen's Compensation Act.
 
 
 43
 Appellants, PVO and Polytron, insist that the eight small mining companies are not employers and so are not eligible for any immunity granted by the Idaho Workmen's Compensation Act. We agree.[10]
 
 
 44
 1. Direct Employer.
 
 
 45
 The Idaho Code defines an employer as "any person who has expressly or impliedly hired or contracted the services of another." Idaho Code § 72-102(10). This statutory language focuses on the party making the hiring decision. Prior to 1971 when the above definition was added to the Code, the Idaho cases, decided under the common law, established that the right to control and direct the activities of the workers is the key factor in finding an employer-employee relationship. Merrill v. Duffy Reed Construction Co., 82 Idaho 410, 353 P.2d 657 (1960). Thus, it is necessary to examine the operating agreements entered into by the third party defendants and Sunshine Mining Company to determine who had the right to hire workers and who exercised control over the activities of the miners.
 
 
 46
 Our job of interpreting these agreements is made more difficult by the fact that there are seven different agreements involved here. However, they share certain features. Sunshine Mining Company is given the exclusive right to conduct development and mining operations on all the claims owned by the small companies covered by these agreements. Most of the agreements give Sunshine the right to suspend operations and require that, even if the other party wishes to independently finance continued operations, Sunshine must be engaged to do the actual work. The agreements generally give the non-operating party a right to inspect the operation, but actual control over operations is vested in Sunshine. It is thus apparent that Sunshine Mining Company alone has the right to control the day to day activities of the miners. These agreements do not specify expressly who has the right to hire workers, but a strong and permissible inference is that the owners of the non-operating interests could not do so.
 
 
 47
 The unit agreement entered into by Sunshine, Hecla and Silver Dollar, which covers the area in which the fire took place, is even more explicit in investing Sunshine Mining Company with exclusive control over the workers. Article VII of that agreement provides that "the number of employees of the unit operator and their selection and the terms of labor and compensation for services performed, shall be determined by the unit operator, and the said employees shall be the employees of the unit operator." To assert that this does not give Sunshine the exclusive power to hire requires a taste for literalism beyond reason. We hold that under both tests for establishing a direct employer, Sunshine Mining Company must be considered the sole direct employer.
 
 
 48
 Third party defendants present two arguments in an attempt to avoid this conclusion. They rely on the Idaho mining partnership law, Idaho Code § 53-401 et seq., and the Idaho cases concerning joint ventures. Since the workmen's compensation act specifically allows partnerships or associations to be employers, Idaho Code § 72-102(19), they argue that the joint entity created by the operating agreement is the direct employer. Should the entity not be recognized under Idaho law it follows, they argue, that each member of the entity must be considered the employer.
 
 
 49
 We agree that some form of joint venture existed here. We also recognize that control need not be shared equally between members of a joint venture, but can be delegated to one member of the group. Shell Oil Company v. Prestidge, 249 F.2d 413 (9th Cir. 1957). Thus, the limited control retained by third party defendants here does not preclude classification of these arrangements as joint ventures. We remain convinced, however, that under the terms of the unit agreements Sunshine alone was the direct employer.
 
 
 50
 Our holding requires that we examine Clawson v. General Insurance Company of America, 90 Idaho 424, 412 P.2d 597, 601 (1966). In Clawson the Idaho Supreme Court held that "a joint venture is not an entity separate and apart from the parties composing it." Thus, there is no separate entity which can be considered the employer. Moving from this unassailable position, third party defendants insist that Clawson requires that members of a joint venture always be considered joint employers of those working for the venture. While Clawson treated members of the joint venture as joint employers it did so with respect to its particular facts. In Clawson two contractors formed a joint venture to construct a school. The joint venture, as such, had no insurance coverage, but each individual member of the joint venture was covered by a surety bond. The Idaho court held that an injured worker could claim against both of the sureties covering the individual members of the joint venture.
 
 
 51
 The Clawson court, in so holding, emphasized that the member's activities in the joint venture project were of the same type which they pursued in their private businesses in which both were then also actively engaged. Moreover, it does not appear that one member was subservient to the other with respect to the affairs of the joint venture. Under such circumstances the court, having refused to treat the joint venture as the employer, had no choice but to treat each member thereof as the employer. Being indistinguishable, parity of treatment was required.
 
 
 52
 Parity, however, may be improper when the members are distinguishable. Indeed, to establish the employer for the purposes at hand, once the joint venture is discarded, requires that each member be measured against Idaho's employer-determining tests. To discard the entity, on the one hand, and to then treat the members of the venture as fungible, on the other, is to do ultimately what initially one refused to do. Once the entity is swept away the members should be treated as individuals for the purposes at hand. To do otherwise is to reintroduce the entity.
 
 
 53
 Approached in this manner our conclusion becomes inevitable. Third party defendants did not work the mines. Sunshine did. Third party defendants did not control the employees. Sunshine did. Third party defendants did not have rights with respect to each and every joint venture. Sunshine did. Third party defendants did not hire the employees. Sunshine did. To clothe third party defendants with Sunshine's apparel merely because a joint venture existed would be inconsistent with Clawson 's rejection of entityship for joint ventures.
 
 
 54
 We recognize that third party defendants contributed to the costs of the workmen's compensation insurance coverage, under the cost-sharing provisions of the operating agreements. This is not the decisive factor in fixing the identity of the direct employer eligible for immunity under the statute. In order to avoid distorting the direct employer concept beyond recognition, the element of control over the employee must be present. This position is supported by recognition in the Idaho statute of an additional group, Statutory Employers, which receives employer treatment although they are not direct employers. See § 2 infra. This strongly suggests a legislative intent to restrict employer treatment to those who meet the ordinary employer-determining tests or come within the special statutory definition. Only Sunshine meets the ordinary tests; hence, we hold that it alone is the direct employer of the miners killed in the fire.
 
 
 55
 2. Statutory Employer.
 
 
 56
 The Idaho statute provides that employer also "includes the owner or lessee of premises, or other person who is virtually the proprietor or operator of the business there carried on, but who . . . for any other reason, is not the direct employer of the workmen there employed." Idaho Code § 72-102(10). Since the third party defendants do own some of the property being mined, it is argued they fit within the category of statutory employer.
 
 
 57
 The cases have established that right to control is not a factor in determining who is a statutory employer. Miller v. FMC Corp., 93 Idaho 695, 471 P.2d 550 (1970). Indeed, the purpose of including the special statutory definition was to broaden the concept of employer beyond what was recognized at common law. Adam v. Titan Equipment Supply Corp., 93 Idaho 644, 470 P.2d 409 (1970).
 
 
 58
 However, in a series of cases interpreting Idaho law, this circuit has established that the statutory employer classification is only available to those owners who are also an operator of the business being carried out by the workers. Kirk v. United States, 232 F.2d 763 (9th Cir. 1956); Ray v. Monsanto Company, 420 F.2d 915 (9th Cir. 1970). Thus, in the Monsanto case a manufacturing company was held not to be the employer of workmen hired by a construction company engaged in new construction at the manufacturing plant. The court found that Monsanto was not in the construction business and so could not be the employer of the construction workers.
 
 
 59
 Here, the small companies are not actively involved in the operation of the mine. They are not "the operators of the business there carried on." They do share in the profits of the mining business being carried on, but theirs is a non-operating interest. Their position, while not identical, is similar in relevant respects to that of one who contracts to have work done for him. The Idaho cases, relied on in the Monsanto case, clearly establish that such a person is not an employer under the statutory definition, even though he benefits from the work done. Moon v. Ervin, 64 Idaho 464, 133 P.2d 933 (1943) (physician who contracted to have a house built is not the employer of workmen involved in the construction); Gifford v. Nottingham, 68 Idaho 330, 193 P.2d 831 (1948) (city which contracted for construction of sewer is not employer of workmen hired by subcontractor). Thus, we hold that the third party defendants are not statutory employers.[11] Since they are neither direct nor statutory employers of the miners, the statutory immunity is not available and the grant of summary judgment must be reversed.
 
 
 60
 C. Third Party Complaint in Sunshine Mining Company Action.
 
 
 61
 Third party defendants were also named by PVO and Polytron as third party defendants in the action brought by Sunshine Mining Company against them for damages to the mine. The district court also granted summary judgment in favor of the third party defendants in this action. We agree that a third party complaint seeking contribution and indemnity must fail when the third party defendant stands in the same position as the original plaintiff. In this situation the third party defendant's liability is not the secondary or derivative liability required for impleader. See Wright and Miller, Federal Practice and Procedure § 1446. Instead a motion under Rule 19 to add the alleged third party defendant as a necessary plaintiff would result in the proper alignment of parties. On the record before us, third party defendants, by virtue of the operating agreements, share with Sunshine Mining Company the interest in the mine. Thus, the third party complaint against them was improper and the grant of summary judgment on this action is affirmed.
 
 
 62
 Affirmed in part, Reversed in part, Remanded in part.
 
 
 
 *
 Hon. George H. Boldt, Senior United States District Court Judge, for the District of Washington, sitting by designation
 
 
 [1]
 Evelyn Anderson, Gerald Anderson, Ronald Anderson, Mahaley Birchett, Timothy Birchett, Joretta Birchett, Marshall Birchett, Billy Birchett, Loretta Birchett, Patricia Casteel, Kerri Casteel, Sherri Casteel, Betty Lou Goff, Rose Ann Goff, Dorothy Johnson, Lynnell Johnson, Paula Stevenson, Sandra Norris, Christine Norris, Carey Norris, Freda Peterson, Dustin Peterson, Janice Rossiter, Tina Rossiter, Mary Ann Russell, Kenneth Russell, Shawn Russell, Scott Russell, Molisa Salyer, Yvonne Walty, Deborah Walty, Denise Walty, William Walty, Jr
 
 
 [2]
 Christine Beachel, James Beachel, Glen Beachel, Lara Beachel, Donald Peterson, Barry Peterson, Terri Ingells, Sharon Hays, Becky Richmond
 
 
 [3]
 Barbara Carlson, Gloria Peninger
 
 
 [4]
 Linda Jenkins, Sherry Nichols, Robert Case, Angela Rapier, Christopher Rapier, Douglas Jackson, Thomas Jackson
 
 
 [5]
 Tina Allison, Michael Delbridge, Cheryl Delbridge, Judy Whatcott, Laurie Whatcott, Kathleen Wilson, Violet Wilson, Wanda Wilson, Brenda Wilson
 
 
 [6]
 The California courts have interpreted a similar wrongful death statute as requiring compulsory joinder, rather than creating a joint cause of action. Cross v. Pacific Gas & Electric Co., 60 Cal.2d 690, 36 Cal.Rptr. 321, 388 P.2d 353 (1964). In that case the court approved a tolling of the Statute of Limitations for minor plaintiffs despite the fact that the adult heirs were barred by the running of the statute. Similarly, in this case, each heir should be required to individually satisfy the administrative claim requirement even though all must join together in a single suit
 
 
 [7]
 The purpose behind requiring the filing of an administrative claim was to "expedite the fair settlement of tort claims asserted against the United States." 1966 U.S.Code Cong. & Admin.News, p. 2516
 
 
 [8]
 Van Fossen v. United States, 430 F.Supp. 1017 (N.D.Cal.1977) can be distinguished from the instant case because there the alleged defect in the administrative claim, the failure to present the claim in the name of a personal representative as required by Virginia law, did not interfere with settlement negotiations
 
 
 [9]
 Our decisions in Blain v. United States, 552 F.2d 289 (9th Cir. 1977), and Caidin v. United States, 564 F.2d 284, 287 (9th Cir. 1977), logically lead us to this conclusion. It could be argued that Weinberger v. Salfi, 422 U.S. 749, 766-67, 95 S.Ct. 2457, 45 L.Ed.2d 522 (1975), and Mathews v. Eldridge, 424 U.S. 319, 326-32, 96 S.Ct. 893, 47 L.Ed.2d 18 (1976), are inconsistent with this position. There, the Supreme Court waived strict compliance with the finality requirement for jurisdiction under 42 U.S.C. § 405(g). The Court in Eldridge stated that administratively imposed exhaustion of remedies requirements could be waived by the Secretary, while only the presentation of the claim requirement was jurisdictional. Id. at 328, 96 S.Ct. 893. There is a difference, however, between an agency's waiving the exhaustion requirement to perfect a claim and the filing of a claim itself. Both Salfi and Eldridge adhere to this distinction. The first may be waived in certain circumstances, but the latter is statutorily required and may not be waived by the government
 Here, the statute requires the filing of a "claim." 28 U.S.C. § 2675(a). What is required to qualify as a claim is established by regulation. 28 C.F.R. § 14.2. The purported claims did not qualify as "claims" and, therefore, there is no jurisdiction. Thus, Salfi and Eldridge provide no reason for us to discontinue our insistence stated in Blain and Caidin that these claim requirements be satisfied.
 
 
 [10]
 Our disposition of this issue makes it unnecessary for us to determine whether Idaho law extends the immunity provided by the Workmen's Compensation Act to a suit for contribution and/or indemnity brought by a third party. See Larson, Workmen's Compensation Law, §§ 76.21 and 76.42 (1976)
 
 
 [11]
 This holding makes it unnecessary to decide the extent of the exception to employer tort immunity provided by Idaho Code § 72-223