**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

ANTON VACEK,
            *Plaintiff-Appellant,*

            and

GOLDEN EAGLE INSURANCE
COMPANY,

                        *Plaintiff,*

            v.

UNITED STATES POSTAL SERVICE;
UNITED STATES OF AMERICA,
            *Defendants-Appellees.*

No. 04-15961

D.C. No.
CV-02-1406-VRW

OPINION

Appeal from the United States District Court
for the Northern District of California
Vaughn R. Walker, District Judge, Presiding

Argued and Submitted
February 15, 2006—San Francisco, California

Filed May 24, 2006

Before: J. Clifford Wallace, Michael Daly Hawkins, and
Sidney R. Thomas, Circuit Judges.

Opinion by Judge Wallace;
Concurrence by Judge Thomas

5739

## COUNSEL

Harold J. Truett, III, San Francisco, California, for Appellant Anton Vacek.

Kevin V. Ryan, United States Attorney; Joann Swanson, Chief, Civil Division; Abraham A. Simmons, Assistant United States Attorney, San Francisco, California, for Appellee United States of America.

**OPINION**

WALLACE, Circuit Judge:

Anton Vacek (Vacek) appeals from the district court's judgment of dismissal of his Federal Tort Claims Act (Act) claim for lack of subject matter jurisdiction. We have jurisdiction over this appeal pursuant to 28 U.S.C. § 1291. We affirm.

**I**

On March 9, 1999, Vacek was injured when his employer's truck, in which he was a passenger, was struck by a United States Postal Service (USPS) truck. His workers' compensation claim was processed by Golden Eagle Insurance Company, his employer's insurance company and the co-appellant in this case.

Vacek retained Harold Truett as his attorney. According to Truett's declaration, Truett telephoned the USPS in late July 2000 to determine how to proceed with Vacek's claim. He was told to complete a Standard Form 95 and to mail it to Truedell Griffin in the Customer Service Department in San Francisco. Truett alleges that he received a Form 95 soon after his telephone call, and that he mailed a completed copy of it to Griffin on August 7, 2000.

On August 16, 2000, Truett received a letter from the USPS containing instructions on how to fill out the Form 95. Truett responded one week later: "A properly completed claim form SF95 was mailed to you a couple weeks back, has not been returned, and I assume has been accepted by the USPS. If this is incorrect, kindly advise." Truett declared that he enclosed another copy of the Form 95 with this letter, although there is no indication from the letter itself that he did so.

After this letter, Truett did not contact the USPS for over a year. In the meantime, on March 9, 2001, the statute of limitations expired on Vacek's claim.

On September 28, 2001, Truett wrote to Griffin and offered to settle Vacek's claim for $75,000. After not receiving a response, Truett wrote three more letters to USPS. Still not having received a response, Truett filed suit against the United States in the district court in April 2002.

On February 5, 2004, the United States moved to dismiss Vacek's suit for lack of subject matter jurisdiction. The United States argued that Vacek had failed to exhaust administrative remedies, as required by the Act, *see* 28 U.S.C. §§ 2401(b), 2675(a), because the USPS had never received his completed Form 95. In support of the motion to dismiss, the United States submitted declarations from Griffin and from Kathleen Arndt, an attorney with the USPS legal department. These declarations stated that the USPS had no record of ever receiving Vacek's claim.

In opposition, Vacek submitted Truett's declaration, which stated that Truett had prepared and mailed the Form 95 on August 7, 2000. Truett also presented evidence that he had created a mailing envelope on that day, and that his secretary had made a notation that the complaint was filed.

The district court dismissed the claim for lack of subject matter jurisdiction. The court held that Vacek had "not carried his burden with respect to [proving] receipt" of the form. The court also held that the September 2001 settlement offer did not fulfill the administrative exhaustion requirement because it was sent after the statute of limitations had expired. In response to Vacek's argument that the USPS should have been on notice of the claim, the court stated that "the jurisdictional requirements of the administrative exhaustion provisions are not subject to equitable tolling."

## II

We review the district court's judgment of dismissal for lack of subject matter jurisdiction de novo. *Bramwell v. U.S.*

*Bureau of Prisons*, 348 F.3d 804, 806 (9th Cir. 2003). We also review the district court's interpretation of the Act de novo. *Lehman v. United States*, 154 F.3d 1010, 1013 (9th Cir. 1998).

A

It is axiomatic that

> [f]ederal courts are courts of limited jurisdiction. They possess only that power authorized by Constitution and statute, which is not to be expanded by judicial decree. It is to be presumed that a cause lies outside this limited jurisdiction, and the burden of establishing the contrary rests upon the party asserting jurisdiction.

*Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994) (citations omitted).

**[1]** Sovereign immunity is an important limitation on the subject matter jurisdiction of federal courts. The United States, as sovereign, can only be sued to the extent it has waived its sovereign immunity. *See, e.g., Dep't of the Army v. Blue Fox, Inc.*, 525 U.S. 255, 260 (1999). The Supreme Court has "frequently held . . . that a waiver of sovereign immunity is to be strictly construed, in terms of its scope, in favor of the sovereign." *Id.* at 261.

**[2]** The Act "waives the sovereign immunity of the United States for certain torts committed by federal employees 'under circumstances where the United States, if a private person, would be liable to the claimant in accordance with the law of the place where the act or omission occurred.' " *Smith v. United States*, 507 U.S. 197, 201 (1993) (emphasis omitted), *quoting* 28 U.S.C. §1346(b). The Act provides that an "action shall not be instituted upon a claim against the United States

for money damages" unless the claimant has first exhausted administrative remedies. 28 U.S.C. § 2675(a).

**[3]** We have repeatedly held that the exhaustion requirement is jurisdictional in nature and must be interpreted strictly:

> This is particularly so since the [Act] waives sovereign immunity. Any such waiver must be strictly construed in favor of the United States. Section 2675(a) establishes explicit prerequisites to the filing of suit against the Government in district court. It admits of no exceptions. Given the clarity of the statutory language, we cannot enlarge that consent to be sued which the Government, through Congress, has undertaken so carefully to limit.

*Jerves v. United States*, 966 F.2d 517, 521 (9th Cir. 1992) (internal quotations and citations omitted); *see also Cadwalder v. United States*, 45 F.3d 297, 300 (9th Cir. 1995). We are not allowed to proceed in the absence of fulfillment of the conditions merely because dismissal would visit a harsh result upon the plaintiff. *See United States v. Kubrick*, 444 U.S. 111, 117-18 (1979). With regard to the exhaustion requirement, the Supreme Court has stated that "in the long run, experience teaches that strict adherence to the procedural requirements specified by the legislature is the best guarantee of evenhanded administration of the law." *McNeil v. United States*, 508 U.S. 106, 113 (1993), *quoting Mohasco Corp. v. Silver*, 447 U.S. 807, 826 (1980).

### B

**[4]** Federal regulations appear to control this appeal. 28 C.F.R. § 14.2 governs the question of when an administrative claim is presented for purposes of the Act. It states: "a claim shall be deemed to have been presented when a Federal agency *receives* from a claimant . . . an executed Standard

Form 95 or other written notification of an incident . . . ." *Id.* (emphasis added). Similarly, 39 C.F.R. § 912.5, which governs damage arising out of the operation of the USPS, maintains that "a claim shall be deemed to have been presented when the U.S. Postal Service *receives* from a claimant . . . an executed Standard Form 95 . . . or other written notification of an incident . . . ." *Id.*

**[5]** In spite of the clear language of the regulation, Vacek relies on *Schikore v. BankAmerica Supp. Ret. Plan*, 269 F.3d 956, 961 (9th Cir. 2001), to contend that the mailbox rule should apply to claims under the Act. The common law mailbox rule provides that the proper and timely mailing of a document creates a "rebuttable presumption that the document has been received by the addressee . . . ." *Id.* However, *Schikore* involved ERISA claims and has nothing to do with the waiver of sovereign immunity; thus, it is inapplicable to this case.

In any event, Vacek's argument is foreclosed by *Bailey v. United States*, 642 F.2d 344 (9th Cir. 1981). There, the plaintiff's decedent was killed in an explosion on a United States Air Force field. Two co-workers were also injured in the same explosion. The same law firm represented the co-workers and Bailey's heirs in a suit against the United States for negligence. *Id.* at 345. The law firm filed the necessary claim papers for the injured co-workers first, and the claims officer in charge promptly sent acknowledgments of receipt. *Id.* In the meantime several letters passed between the law firm and the Air Force regarding the Bailey claim, containing detailed information about the claim that was to be filed, including Bailey's funeral bills. *Id.* at 346. The claims officer replied that the file would be complete once Bailey's administrative claim was received.

Bailey's attorneys mailed the claim forms on September 13, 1976. Upon learning in June 1977 that one of the co-worker's claims was denied, the lawyers inquired about Bai-

ley's claim and were told that there was no record that the Air Force had ever received it. The attorneys immediately sent copies of the claim, but the Air Force refused to consider it because it was not filed within two years of the accident. *Id.* For the purposes of the appeal, the government accepted that the claim form had been mailed. *Id.* In the district court, the government presented the affidavits of four claims officers stating that they had never received the claim. The district court dismissed the action for lack of subject matter jurisdiction. *Id.*

**[6]** We affirmed. "[T]he claim was not 'presented,' i.e., 'received' by the agency, as the statute and the regulation require, within two years. Yet Bailey . . . would have us read an exception into the statute and the regulations because of the particular circumstances in this case." *Id.* at 346-47. We continued: "[W]e reject appellant's claim for relief from the requirements of the Act. . . . Nor do we accept appellants' invitation to rewrite the Act and in effect repeal the regulation by holding that mailing alone is sufficient to meet the requirement that a claim be 'presented.' " *Id.* at 347.

Our opinion then continued to a specific discussion of the mailbox rule. "Finally, we reject appellants' claim that a presumption of receipt arises in this case. Assuming, without deciding, that such a presumption may arise under federal law, it was amply rebutted by the affidavits presented to the district court by the government." *Id.*

**[7]** *Bailey* presents virtually identical facts to the case at hand. As in *Bailey*, Vacek's counsel did not send the form by certified mail. As in *Bailey*, there was a long series of communications between plaintiff's counsel and the administrative agency. As in *Bailey*, Vacek's counsel did nothing to verify that the claim had been received. As in *Bailey*, the government provided affidavits attesting that the claim was never received. There is no principled distinction that can be drawn. *Bailey* controls this appeal.

C

**[8]** In light of the Supreme Court's repeated admonition that waivers of sovereign immunity must be interpreted strictly, we conclude that *Bailey* sets out the correct rule of law. Since *Bailey*, virtually every circuit to have ruled on the issue has held that the mailbox rule does not apply to Act claims, regardless of whether it might apply to other federal common law claims. *See, e.g., Moya v. United States*, 35 F.3d 501, 504 (10th Cir. 1994) ("It is the plaintiff's burden to establish the proper agency's receipt of the request for reconsideration"); *Bellecourt v. United States*, 994 F.2d 427, 430 (8th Cir. 1993) (upholding dismissal where "the 'request for administrative remedy' was not mailed by certified mail [and] the 'request for administrative remedy' was not received by the Federal Bureau of Prisons"); *Drazan v. United States*, 762 F.2d 56, 58 (7th Cir. 1985) ("[T]he district court was quite right to hold that mailing is not presenting; there must be receipt"). Put simply, it cannot be strict construction of the waiver to read the word "received" as actually meaning "mailed."

There is only one circuit case to have interpreted the Act to allow the mailbox rule. *Barnett v. Okeechobee Hosp.*, 283 F.3d 1232, 1238-39 (11th Cir. 2002). There, Barnett asserted that he had mailed a completed Form 95 and included in his amended complaint a copy of the form, the accompanying cover letter, and a copy of the envelope in which he mailed it. *Id.* at 1238. The court found that this evidence "raise[d] an inference" that he had mailed the documents. *Id.* The court then detailed the acceptance of the mailbox rule and stated that the government had a financial stake in the outcome of this litigation. *Id.* at 1240. The court then concluded: "[W]e simply believe that the VA should not be accorded any special presumption of believability because it is a branch of the United States government and should be treated no differently than a private defendant . . . ." *Id.*

Unlike the court in *Barnett*, we can think of at least one reason why the federal government should be treated differently from a private defendant in this situation: the federal government must waive sovereign immunity. "In analyzing whether Congress has waived the immunity of the United States, [courts] must construe waivers strictly in favor of the sovereign, and not enlarge the waiver beyond what the language requires." *Library of Congress v. Shaw*, 478 U.S. 310, 318 (1986) (internal quotation marks and citations omitted). Because *Barnett* is contrary to the law of the Supreme Court, to our circuit, and to that of three other circuits, we will not follow it.

It would have taken minimal effort on the part of Vacek's attorney to verify that the claim had been received: sending it by certified mail. Furthermore, the administrative exhaustion requirement is satisfied if the administrative agency fails to make final disposition of a claim within six months. 28 U.S.C. § 2675(a). If Vacek's attorney had contacted the USPS six months after he first mailed the form rather than waiting for over a year, he still would have been within the statute of limitations and could have filed the claim anew. "We do not think that we should now stretch and distort the statute and the regulation to rescue counsel from their own carelessness." *Bailey*, 642 F.2d at 347.

Although neither party cited *Bailey* in the briefs, Vacek's counsel conceded *Bailey*'s controlling effect at oral argument, calling it "a killer case for the government." He continued, "I recall sitting and reading the dissent and hoping that would become the rule of the circuit." As a three-judge panel of the circuit, we have no such power. *See Barapind v. Enomoto*, 400 F.3d 744, 751 n.8 (9th Cir. 2005) (en banc) (per curiam). Nor do we think *Bailey* was wrongly decided. *Bailey* directly controls.

### D

Vacek further argues that mail carriers are representatives and mailboxes are extensions of the USPS, such that deposit-

ing a letter with either one satisfies the presentment require-
ment. Vacek did not raise this argument in the district court
and, therefore, we will not address it. *See Singleton v. Wulff*,
428 U.S. 106, 120 (1976).

E

Finally, Vacek argues that the USPS should be estopped
from arguing that it never received Vacek's Form 95, because
it does not deny receiving multiple letters explicitly mention-
ing the form.

Vacek's argument is foreclosed by our caselaw. The United
States may assert "the insufficiency of [an] administrative
claim under section 2675(a)" at any time because "[t]he gov-
ernment may not be equitably barred from asserting jurisdic-
tional requirements." *Burns v. United States*, 764 F.2d 722,
724 (9th Cir. 1985); *see also Claremont Aircraft, Inc. v.
United States*, 420 F.2d 896, 898 (9th Cir. 1969) ("[O]rdinary
principles of estoppel or waiver are not applied against the
Government"). Furthermore, the requirements of the Act are
"jurisdictional in nature and may not be waived." *Blain v.
United States*, 552 F.2d 289, 291 (9th Cir. 1977).

**AFFIRMED.**

---

THOMAS, joined by HAWKINS, Circuit Judges, concurring:

This case provides fresh meaning to James M. Cain's "The
Postman Always Rings Twice."[1] Anton Vacek was first struck

---

[1]JAMES M. CAIN, THE POSTMAN ALWAYS RINGS TWICE (KNOPF, 1934); *See
also* THE POSTMAN ALWAYS RINGS TWICE (WARNER, 1981); THE POSTMAN
ALWAYS RINGS TWICE (MGM, 1946); LE DERNIER TOURNANT (LUX PRODUC-
TIONS, 1939). The title is ironic because there is no reference to a postman
either in Cain's book or in the subsequent film adaptations. When asked

by a Post Office truck, and then had his damage claim stamped out because the Post Office lost it in the mail.[2]

The legal question presented by this case is whether the United States Post Office is entitled to immunity from suit when its employees lose a plaintiff's claim in the mail? The answer, based on the letter of the law as expressed in *Bailey v. United States*, 642 F.2d 344 (9th Cir. 1981), appears to be "yes." However, because subsequent case law has undermined *Bailey*, and because I believe *Bailey* was incorrectly decided, I write separately to urge re-examination of the *Bailey* rule.

I

The Federal Tort Claims Act ("FTCA") "waives the United States' sovereign immunity for actions in tort" and permits claimants to sue the United States in district court after complying with administrative requirements. *Cadwalder v. United States*, 45 F.3d 297, 300 (9th Cir. 1995). Before filing a lawsuit, a claimant must "have first presented the claim to the appropriate Federal agency," 28 U.S.C. § 2675(a), "within two years after such claim accrues," 28 U.S.C. § 2401. Section 2675(a) "admits of no exceptions. Given the clarity of the statutory language, we cannot enlarge that consent to be sued which the Government, through Congress, has undertaken so carefully to limit." *Jerves v. United States*, 966 F.2d 517, 521 (9th Cir. 1992) (internal quotations omitted).

---

for an explanation, Cain purportedly explained that his manuscript had been rejected by 13 publishers prior to being accepted for publication on his 14th attempt, so that when the publisher asked him what he wanted the work to be entitled he drew on this experience and suggested *The Postman Always Rings Twice*. Like Vacek, Cain apparently had come to associate the postal service with dark disappointment.

[2]The Postal Service disputes this, but in reviewing a dismissal for lack of subject matter jurisdiction, we construe the facts in the light most favorable to the plaintiff. *Saridakis v. United Airlines*, 166 F.3d 1272, 1276 (9th Cir. 1999).

The presentation requirements of §§ 2401 and 2675 are satisfied when a federal agency receives "an executed Standard Form 95 or other written notification of an incident, accompanied by a claim for money damages in a sum certain." 28 C.F.R. § 14.2 (administrative claims under the FTCA). *See also* 39 C.F.R. § 912.5 (procedures for adjudicating claims against the USPS); *Burns v. United States*, 764 F.2d 722, 724 (9th Cir. 1985) ("the view held by the Ninth Circuit is that the jurisdictional requirement of minimum notice is satisfied by (1) a written statement sufficiently describing the injury to enable the agency to begin its own investigation, and (2) a sum certain damages claim.") (internal quotations omitted).

We have refused to hold that mailing a letter "alone is sufficient to meet the requirement that a claim be 'presented.' " *Bailey*, 642 F.2d at 347. However, we have assumed, without deciding, that the mailbox rule applies to FTCA cases. *Id.*[3]

---

[3]It is worth noting that since we assumed that the mailbox rule applies to FTCA cases in *Bailey*, we have consistently held that the mailbox rule applies to cases against the United States. *See, e.g.*, *Lewis v. United States*, 144 F.3d 1220, 1222 (9th Cir. 1998) ("The law of this circuit is clear. We go by the 'mail box rule.' Proper and timely mailing of a document raises a rebuttable presumption that the document has been timely received by the addressee. The rule applies to mailings by taxpayers to the Service.") (internal citations omitted).

Moreover, our assumption in *Bailey* that the mailbox rule applies to FTCA claims is in accord with other circuits. *See Barnett v. Okeechobee Hosp.*, 283 F.3d 1232, 1238-39 (11th Cir. 2002). The majority opinion's statements to the contrary are not supported. In *Moya v. United States*, 35 F.3d 501, 504 (10th Cir. 1994), the Tenth Circuit considered the application of the mailbox rule to FTCA cases. It did not hold, as the majority suggests, that the mailbox rule does not apply. Rather, it held: "While the law presumes delivery of a properly addressed piece of mail, no such presumption exists for *certified mail* where the return receipt is not received by the sender." *Id.* at 504 (citations omitted and emphasis added). Similarly, in *Bellecourt v. United States*, 994 F.2d 427 (8th Cir. 1993), the Eighth Circuit held that a plaintiff had failed to meet the presentment requirements of the FTCA. However, it is not clear at all that the Eighth Circuit based its opinion on the inapplicability of the mailbox rule to

Our assumption that the mailbox rule applies to FTCA cases makes sense. As we have previously recognized, the mailbox rule is "a settled feature of federal common law," and may be applied to so long as its application is consistent with Congress's statutory scheme. *Schikore v. BankAmerica Supplemental Ret. Plan,* 269 F.3d 956, 961, 963 (9th Cir. 2001).

Prior to 1966, administrative agencies could only settle FTCA claims of less than $2,500, and litigants claiming more were required to file suit in federal court. The limitation on agencies' ability to settle meant that a large number of suits were filed in federal court. In 1966, Congress amended 28 U.S.C. § 2675 to its current form, which requires all potential litigants to file their claims with the appropriate administrative agency before going to court. With the amendment, Congress intended to provide "for more fair and equitable treatment of private individuals and claimants when they deal with the Government or are involved in litigation with their Government" and to "ease court congestion and avoid unnecessary litigation, while making it possible for the Government to expedite the fair settlement of tort claims asserted against the United States." S. REP. NO. 89-1327, 1966 U.S.C.C.A.N. 2515, 2516 (1966). We have interpreted the legislative history of the 1966 amendments to mean that Congress intended § 2675 to require only "minimal notice" of a claim against government agencies. *Shipek v. United States*, 752 F.2d 1352, 1354 (9th Cir. 1985).

The mailbox rule, which creates a rebuttable presumption that a properly addressed and mailed letter will arrive at its destination within a reasonable amount of time, is consistent

FTCA claims. Rather, the Eighth Circuit appears to have based its decision on the fact that the plaintiff used the wrong form for his FTCA claim and failed to comply with the "sum certain" requirement. Finally, in *Drazan v. United States*, 762 F.2d 56, 58 (7th Cir. 1985), the Seventh Circuit makes no mention of the mailbox rule's presumption of receipt, and we cannot infer that the Seventh Circuit considered it.

with this "minimal notice" requirement and Congress's intent to make the FTCA claim procedure more fair to litigants, especially when applied to the USPS. As we have recognized, "[i]n the absence of the use of registered or certified mail, on the one hand, and a returned envelope or other indication of failed delivery, on the other, both receipt and non-receipt are difficult to prove conclusively." *Schikore*, 269 F.3d at 963 (internal quotations omitted). The mailbox rule fills that gap, enabling the claimant to prove his or her case. To require the litigant — who has no access to the annals of a government agency — to present concrete evidence of receipt in the absence of certified or registered mail would impose an insurmountable obstacle.

Furthermore, application of the mailbox rule does not impose an unreasonable burden on government agencies, nor does it impermissibly broaden the scope of Congress's waiver of the United States' immunity, because it does not, as the majority opinion suggests, alter the receipt requirement of § 2675 and enlarge Congress's waiver of sovereign immunity. *See United States v. Kubrick*, 444 U.S. 111, 118 (1979) (noting that the courts should neither extend nor narrow the congressional waiver of the United States' immunity). Following our lead in *Bailey*, a plaintiff must still prove receipt as the statute requires, but he may rely on the mailbox rule's *rebuttable* presumption to do so.

II

Although I agree with our assumption in *Bailey* that the mailbox rule applies to FTCA cases, I believe that our decisions in more recent mailbox rule cases have undermined substantially our interpretation of the mailbox rule in that case. There, the plaintiff's counsel mailed an FTCA claim to the Air Force and argued, based on the common law mailbox rule, that his having mailed the claim created a presumption of receipt by the Air Force. The Air Force presented affidavits of several officers who stated that the claim had never been

received. We assumed that the mailbox rule applied, but held that the presumption of receipt "was amply rebutted by the affidavits presented to the district court by the government." *Bailey*, 642 F.2d at 347.

The majority opinion correctly points out that the facts of this case are close, if not indistinguishable, from *Bailey*. Both plaintiffs sent FTCA claims to government agencies by regular mail, both plaintiffs had lengthy discussions with the relevant government agency, and both agencies provided affidavits stating that the FTCA claim was never received. Because we held in *Bailey* that the agency's affidavits rebutted the presumption of receipt in *Bailey*, so too, says the majority opinion, the USPS affidavits in this case rebut the presumption of receipt. I do not disagree with this conclusion; however, application of the *Bailey* rule here fails to account for more recent developments in our interpretation of the mailbox rule.

Since *Bailey*, we have required more than an affidavit claiming non-receipt to rebut the mailbox rule's presumption of receipt. In deciding *Schikore* in 2001, we rejected an argument identical to the one we had accepted 20 years earlier in *Bailey*. We conducted a detailed analysis of "mailbox rule" claims and held that a receiving party must do more than swear that it did not receive a claim to rebut a presumption of receipt. The receiving party must

> describe in detail its procedures for receiving, sorting, and distributing mail, to show that these procedures were properly followed at the time when the document in question might conceivably have been delivered by the postal service, to provide evidence that it has conducted a thorough search for the document at the addressee's physical facility, and to establish that had the document been received around the time the claimant asserted it was mailed,

> it would presently be at the location searched by the [receiving party].

269 F.3d at 964. Applying *Schikore* in the FTCA context, affidavits from the government stating that it did not receive a plaintiff's FTCA claim, like those produced in *Bailey* and in this case, are insufficient to rebut the presumption of receipt created by the mailbox rule. Thus, *Bailey* and *Schikore* command opposite results.

The majority implies that there is no tension between *Schikore* and *Bailey* by noting that "*Schikore* involved ERISA claims and has nothing to do with the waiver of sovereign immunity; thus, it is inapplicable to this case." However, I do not find this distinction persuasive. The mailbox rule is an evidentiary presumption that has been applied consistently to settle disputes about whether a properly mailed claim was received. If, as *Bailey* assumed, the mailbox rule applies to FTCA cases, it should apply with full force, even when the defendant is the USPS. We do not change the standards for admission of hearsay evidence when the government is the defendant. Nor should we alter the operation of the mailbox rule when the government is the defendant.

Moreover, if, as the majority opinion reasons, the *Bailey* rule, and not that set forth in *Schikore*, applies to FTCA cases, the mailbox rule would serve no purpose. The government could rebut a presumption of receipt simply by claiming "we never received it," without showing that it had made a reasonable effort to search for the missing document. Under the *Bailey* construction of the mailbox rule, a litigant remains in the precise position that the mailbox rule seeks to avoid: the litigant — who has no access to the vast machinery of a government agency — would have to present concrete evidence that his claim was received. Such a result is inconsistent with Congress's intent to provide "for more fair and equitable treatment of private individuals . . . [who] are involved in

litigation with their Government," and our interpretation of
§ 2675 as requiring only "minimal notice."

Thus, as Judge Jameson observed in his dissent in *Bailey*:

> Merely because the administrative claim require-
> ment is a "jurisdictional prerequisite" should not
> foreclose our consideration of these equitable fac-
> tors. In *House v. Mine Safety Appliance Co.*, 573 609
> (9th Cir. 1978), a case relied on by the majority, this
> court recognized that where "unusual and compel-
> ling circumstances" exist, literal compliance with the
> administrative claim requirements may be excused.
> *Id.* at 618. This court "softened the vigor" of [the
> regulation] because certain claimants presented
> problems not previously considered by this court and
> their failure to strictly comply with the regulations
> did not prejudice the government.

642 F.2d at 349.

Judge Jameson examined other statutes in which "jurisdic-
tional" time limits applied, and noted that a number of excep-
tions had been forged in order "to give effect to the broad
remedial purposes" of the acts. *Id.* He concluded: "I see no
reason why the FTCA time limitation should not likewise be
construed to give effect to the remedial purposes of the Act."
*Id.*

The rule proposed by Judge Jameson in his dissent would
not render the FTCA time limits any less meaningful. Rather,
it would allow presentation of evidence to establish that a
claim had, in fact, been timely filed — as opposed to closing
the federal courthouse doors based on a contested government
affidavit alone.

In *Bailey*, as in this case, the plaintiffs vigorously denied
that they had slept on their rights. In *Bailey*, as in this case,

the plaintiffs tendered evidence showing repeated attempts to contact the government, and specific evidence that the claim had, in fact, been mailed. Under such circumstances, the government ought not to be allowed to escape a valid cause of action simply by tendering an affidavit that a government official had examined his own files and had not found the claim.

### III

In sum, I would expressly apply the mailbox rule to FTCA claims. I would overrule *Bailey*, and adopt the cogent and persuasive reasoning of Judge Jameson's dissent. *Bailey*, 642 F.2d at 348-50. However, because I agree that *Bailey* controls this case, I concur in the majority opinion.